1

**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)

2

445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071

3

Telephone: (213) 593-9095
Facsimile: (213) 785-2899

4

E-mail: abiri@cd-lawyers.com

5

*Attorneys for Plaintiff and the Putative Classes*

6

7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8

9

Elena Nacarino, on behalf of herself and all
others similarly situated,

10

11

                    Plaintiff,

12

              v.

13

KSF Acquisition Corporation, a corporation;
and DOES 1 through 10, inclusive,

14

                    Defendants.

15

CASE NO.: 3:22-cv-04021

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Elena Nacarino ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant KSF Acquisition Corporation ("Defendant" or "KSF") based on Defendant's false and deceptive advertising and labeling of its SlimFast smoothie and shake mix products. Plaintiff makes the following allegations based on the investigation of her counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on her personal knowledge.

## INTRODUCTION

1.      This case is predicated on a systemic course of false, misleading, and unlawful conduct: Defendant has falsely and deceptively misrepresented the amount of protein in its SlimFast smoothie and shake mix products (the "Products").[1]

2.      The Products are one of the nation's leading smoothie and shake mixes, and Defendant is one of the nation's leading manufacturers of these products. Consumers trust Defendant to be transparent and sincere in its advertising, rather than deceitful and misleading. Unfortunately for consumers, this is not Defendant's practice with respect to its marketing and advertising of the Products.

3.      Specifically, on the front label of each of the Products, Defendant prominently places a representation which promises a specific number of grams of protein (e.g., "20g HIGH PROTEIN") (hereinafter, the "Protein Representation").[2]   Consumers understand this message simply: each serving of the Products' smoothie/shake mix contains the number of grams of protein promised on the front label.

4.      However, unbeknownst to consumers, the shake mix contains far fewer grams of protein than what is promised in the Protein Representation. Instead, the Products require *milk* to be added in order to obtain the grams of protein advertised in the Protein Representation.

---

[1] The Products include the following: (1) SlimFast Original Meal Replacement Shake Mix; (2) SlimFast Advanced Nutrition Smoothie Mix; (3) SlimFast Diabetic Weight Loss Meal Shake; and (4) SlimFast Advanced Immunity Smoothie Mix.

[2] See Paragraph 16, *infra*, for an example of the Protein Representation.

5.      Nothing on the Products' front packaging discloses to consumers that they must add milk to receive the amount of protein promised in the Protein Representation.

6.      Plaintiff and other consumers purchased the Products based on the reasonable belief that they would receive the grams of protein per serving promised in the Protein Representation from the Products alone. Had Plaintiff and other consumers known the truth—i.e., that consumers must add milk to obtain the grams of protein promised in the Protein Representation—they would not have purchased the Products or they would have paid less for them. Thus, Plaintiff and other consumers have suffered economic injury as a result of Defendant's deceptive marketing. Plaintiff and other consumers have also suffered a financial injury in the form of paying a price premium for a greater amount of protein than what was provided to them.

7.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled Products, seeking to prevent Defendant from continuing to falsely advertise the Products in the future, and to obtain monetary compensation for purchases of the Products.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Classes, including Plaintiff.

9.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through its sale of the Products in California and to California consumers.

10.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and she purchased one of the Products in this District during the statute of limitations period.

**PLAINTIFF**

11.    Plaintiff is a citizen of the United States and the State of California and she currently resides in San Francisco, California. In or around December 2021, Plaintiff purchased the SlimFast Advanced Nutrition Smoothie Mix Vanilla Cream Product from a Safeway store in San Francisco, California. In purchasing the Product, Plaintiff saw and relied on the "20g HIGH PROTEIN" representation on the Product's front label. Based on this representation, Plaintiff believed that the smoothie mix itself contained 20 grams of protein per serving. Plaintiff's reasonable belief that the Product's smoothie mix contained the number of grams promised in the Protein Representation was an important factor in her decision to purchase the Product. Plaintiff would not have purchased the Product, or she would have paid less for it (i.e., she would not have paid a price premium), but for the aforementioned misrepresentation. Because did not receive the number of grams of protein from the Product itself as promised, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.

12.    Despite Defendant's misrepresentations, Plaintiff would purchase the Products, as advertised, if they actually provided the grams of protein in the Products' shake/smoothie mix as stated on the front label. Although Plaintiff regularly shops at stores that carry the Products, absent an injunction of Defendant's deceptive advertising, she will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiff currently believes that the Protein Representation is inaccurate, she lacks personal knowledge as to Defendant's specific business practices, and thus, she will not be able determine whether the Products truly will provide the stated protein from the mix itself. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the representations on the Products' front label. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that they will receive the grams of protein from the Products as stated on the front label.

-3-

1

## **DEFENDANT**

13.     KSF Acquisition Corporation is a Delaware corporation that maintains its principal place of business and headquarters in Palm Beach Gardens, Florida. It markets and distributes the Products throughout California and the United States. The Products are sold in grocery stores such as Ralph's, and online on websites such as Amazon.com.

## **FACTUAL ALLEGATIONS**

14.     Defendant owns SlimFast, one of the leading dietary shake and smoothie mix brands in the United States. Consumers trust Defendant to be honest and forthright in its advertising and marketing of its products, including the Products at issue here.

15.     Despite this trust, Defendant has engaged in false and deceptive advertising in the marketing and sale of the Products.

16.     For example, as demonstrated below, on the front label of each of the Products, Defendant prominently places a representation which promises a specific number of grams of protein (e.g., "20g HIGH PROTEIN") (hereinafter, the "Protein Representation").

-4-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24    17.    Based on the foregoing example, a reasonable consumer would expect the smoothie

25 mix to contain 20 grams of protein per serving. However, unbeknownst to consumers, the

26 SlimFast Advanced Nutrition Smoothie Mix itself does not contain "20g HIGH PROTEIN" per

27 serving, but instead, contains only *12g of protein per serving*. This means that the Product fails to

28 provide 40% of the promised grams of protein per serving.

18.     Defendant's other Products suffer from the same flaw. Most shockingly, SlimFast's Original Product promises "10g PROTEIN", but the mix only contains 2g of protein per serving. The Original Product fails to provide a considerable ***80% of the promised grams of protein***.

19.     The Advanced Immunity Product similarly promises "20g PROTEIN", but only provides 12g of protein per serving. The Diabetic Weight Loss Products promise 10-11g of protein, but provide only 2-3g of protein per serving.

20.     Instead, to obtain the number of grams of protein represented on the Products' front labeling, consumers must add milk to the Products. Nothing on the Products' front packaging discloses to consumers that they must add milk to receive the amount of protein promised in the Protein Representation.

21.     As a result, Defendant's labeling of the Products is false and deceptive, and mislead reasonable consumers.

22.     Complaints by other purchasers of the Products show that this deception is not an isolated incident experienced by Plaintiff. Below are a few of many complaints by consumers of the Products regarding this precise issue:[3]

Jenny

⭐☆☆☆☆  **Misleading and fraudulent information**

Reviewed in the United States on November 27, 2018

Style: Advanced Nutrition  |  Flavor Name: Vanilla Cream  |  Size: 12 Servings (Pack of 1)  |  **Verified Purchase**

This product does not contain the 20 grams of protein it claims. It only contains 12 grams of protein per serving. In order to reach the 20 grams you have to mix it with 8 oz. of dairy milk. If you are lactose intolerant or just avoid dairy this is not doable. All through the description of this product it claims that the "powder " contains 20 grams of protein. False and misleading. When I complained to the company, they said they were sorry and that I should return the product if I was unhappy. Great! So now I have to pay the return shipping to send back a product I was duped into buying. Wow! Thanks for nothing!

355 people found this helpful

---

[3] https://www.amazon.com/SlimFast-Original-Replacement-Vitamins-Chocolate/dp/B000DZT0N0/ref=cm_cr_arp_d_product_top?ie=UTF8#customerReviews [Original Product] and https://www.amazon.com/SlimFast-Advanced-Nutrition-Vanilla-Smoothie/dp/B0187HZC32/ref=sr_1_6?crid=1XVUQEA6HULL9&keywords=Slimfast%2Badvanced&qid=1642984987&s=hpc&sprefix=slimfast%2Badvance%2Chpc%2C121&sr=1-6&th=1 [Advanced Nutrition Product] (last visited July 6, 2022).

-6-



Lynette Molina

★☆☆☆☆ **Do not waste your money**

Reviewed in the United States on September 29, 2019

Style: Advanced Nutrition | Flavor Name: Vanilla Cream | Size: 12 Servings (Pack of 2) | Verified Purchase

It contains a deceiving wrapper making you think that the protein grams you will get are from the shake powder, but in reality they are counting the milk's protein on the grams advertised. I cant drink milk so it was such a waste of money. Any other protein brand indicates the protein grams in yhe from of the label for the powder only, then will have a chat with or without milk on the nutritional facts.

Zakira

★☆☆☆☆ **This product only has 2g protein as compared to the advertised 10g!!**

Reviewed in the United States on June 9, 2020

Flavor Name: Rich Chocolate Royale | Size: 34 Servings (Pack of 1) | Verified Purchase

It advertises 10g protein If you look on the Nutritional Facts it's only 2g protein and only 10g if you mix it with non fat milk! False advertising. What if you mix it with water or something other than milk? They shouldn't put that on the front of the can if that's not accurate. I decided to go with Pure Protein powder that I found on amazon. Around the same price, 25g of protein and only 4g of sugar compared to the 11g with this product. Also around the same calories. Way better for your body.

Christine A Berger

★☆☆☆☆ **CONTAINS **TWO** GRAMS OF PROTEIN**

Reviewed in the United States on September 13, 2018

Flavor Name: Rich Chocolate Royale | Size: 34 Servings (Pack of 1) | Verified Purchase

The product arrived and I was furious to see it contains only 2 grams of protein. I feel the marketing is blatantly misleading in repeatedly stating 10 grams of protein. The other 8 is from milk you have to add yourself; it's also strongly implied this product is ready-to-drink with water like the familiar cans. I looked at my husband's hot cocoa mix and it's literally the same amount of protein and calories; 2 grams protein and 100 calories. And at least the cocoa I could drink mixed with water! I am seeking a refund. This is not a nutritional product and I don't feel it would add any health or wellness benefits over just drinking a glass of plain milk.

23.     The belief that the Products themselves will actually contain the amount of protein promised in the Protein Representation is even more reasonable given that other smoothie and shake mix manufacturers correctly advertise on their products' front labels the amount of protein that consumers will receive based on the *products alone*, irrespective of whether the consumer adds milk or any other ingredient.

24.     As demonstrated below, one of the nation's leading nutrient supplement companies, Nestle's Garden of Life, correctly advertises the grams of protein consumers receive *solely* from the content of its Garden of Life Fit High Protein For Weight Loss dietary shake product.[4] The product's front label advertises "28 grams" of protein, and this is precisely what consumers receive from the product's contents alone.

---

[4] https://www.amazon.com/Garden-Life-Organic-Meal-Replacement/dp/B01NA7VLNL/ref=sr_1_16?crid=1XIVG45GIOYG2&keywords=Protein%2Bshake%2Bmix&qid=1649130728&rdc=1&sprefix=protein%2Bshake%2Bmi%2Caps%2C154&sr=8-16&th=1 (last visited July 8, 2022).



# Supplement Facts

Serving Size 1 Level Scoop (About 46.5g)
Servings Per Container 20

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Calories | 180 | |
| Total Fat | 3 g | 4%[1] |
| Saturated Fat | 0.5 g | 3%[1] |
| *Trans* Fat | 0 g | |
| Polyunsaturated Fat | 1 g | |
| Monounsaturated Fat | 1 g | |
| Sodium | 280 mg | 12% |
| Total Carbohydrate | 11 g | 4%[1] |
| Dietary Fiber | 4 g | 14%[1] |
| Soluble Fiber | 2 g | |
| Insoluble Fiber | 2 g | |
| Total Sugars | <1 g | + |
| Includes 0g Added Sugars | | 0%[1] |
| Protein | 28 g | 38%[1] |
| Vitamin D | 25 mcg (1,000 IU) | 125% |
| Calcium (naturally occurring) | 150 mg | 12% |
| Iron (naturally occurring) | 3 mg | 17% |
| Potassium (naturally occurring) | 90 mg | 2% |
| Vitamin A | 280 mcg | 31% |
| Vitamin C (naturally occurring) | 1.2 mg | 1% |
| Vitamin E (from Sunflower Oil) | 15 mg | 100% |
| Vitamin K | 130 mcg | 108% |
| Magnesium (naturally occurring) | 27 mg | 6% |
| Chromium (from Brown Rice Chelate) | 35 mcg | 100% |

25.     Another of the nation's leading nutrient supplement companies, Nature's Bounty,

correctly advertises its Complete Protein & Vitamin Shake Mix[5] in the same manner.

---

[5] https://www.amazon.com/Natures-Bounty-Complete-Collagen-
Chocolate/dp/B08YS3TWTT/ref=sr_1_6?crid=1XIVG45GIOYG2&keywords=Protein+shake+mi



x&qid=1649130728&sprefix=protein+shake+mi%2Caps%2C154&sr=8-6 (last visited July 8, 2022).

-11-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**DIRECTIONS:** Mix two (2) scoops (33 g) with 8 oz of water. To increase the protein content to more than 20 grams per serving and enjoy a creamy texture, mix with 8 oz of skim milk. Shake can also be enjoyed by mixing with you favorite vegetarian milk alternative. Best served ice cold.

## Supplement Facts

Serving Size 2 Scoops (33 g)
Servings Per Container about 13

| Amount Per Serving | | %Daily Value |
|---|---|---|
| Calories | 110 | |
| Total Fat | 3 g | 4%** |
| Saturated Fat | 1 g | 5%** |
| Cholesterol | 25 mg | 8% |
| Total Carbohydrate | 11 g | 4%** |
| Dietary Fiber | 6 g | 21%** |
| Total Sugars | 2 g | *** |
| Includes 2g Added Sugars | | 4%** |
| Protein | 15 g | 30%** |
| Vitamin C (as Ascorbic Acid) | 60 mg | 67% |
| Vitamin D (as D2 Ergocalciferol) | 20 mcg (800 IU) | 100% |
| Thiamin (Vitamin B-1) (as Thiamin Hydrochloride) | 1.5 mg | 125% |
| Riboflavin (Vitamin B-2) | 1.7 mg | 131% |
| Niacin (as Niacinamide) | 20 mg | 125% |
| Vitamin B-6 (as Pyridoxine Hydrochloride) | 2 mg | 118% |
| Folate | 666 mcg DFE (400 mcg Folic Acid) | 167% |
| Vitamin B-12 (as Cyanocobalamin) | 6 mcg | 250% |
| Biotin (as d-Biotin) | 300 mcg | 1,000% |
| Pantothenic Acid (as d-Calcium Pantothenate) | 10 mg | 200% |
| Calcium | 230 mg | 18% |
| Iron | 3 mg | 17% |
| Phosphorus | 230 mg | 18% |
| Magnesium | 50 mg | 12% |
| Sodium | 100 mg | 4% |
| Potassium | 380 mg | 8% |
| Digestive Enzyme Blend Bromelain (from Pineapple), Papain (from Papaya fruit) | 11 mg | *** |
| Flaxseed which typically contains: | 888 mg | *** |
| Alpha-Linolenic Acid (Omega-3) | 218 mg | *** |
| Other Fatty Acids | | *** |
| Collagen | 3 g | *** |

**Percent Daily Values are based on a 2,000 calorie diet.
***Daily Value not established.

25    26.    Thus, consumers are accustomed to seeing dietary shake mix products' front labels

26  advertise the grams of protein based on the protein contained in the products *alone*.

27
28

27.     The amount of protein contained in the Products is a material factor to Plaintiff and other reasonable consumers as the Products serve as nutritional shakes and meal replacements and protein is an essential nutrient for the human body.

28.     Defendant's decision to highlight the purported protein in the Products through the conspicuous Protein Representation, in addition to the purchasing decisions and beliefs from consumers such as Plaintiff and the reviews depicted above, further demonstrate the materiality of the Protein Representation.

29.     As the entity ultimately responsible for the manufacturing and advertising of the Products, Defendant is responsible for the accuracy of the information conveyed about the Products, including the representations on the front packaging.

30.     Defendant knew or should have known that the Products' advertising is deceptive, and that reasonable consumers would believe the Products contain the number of grams of protein per serving promised on the Products' front label. For example, Defendant should have been aware of the aforementioned complaints from its consumers regarding this precise issue.

31.     Through the use of misleading representations, Defendant commands a price that Plaintiff and the Classes would not have paid had they been fully informed. Had Plaintiff been aware that the Product was falsely labeled, she would have purchased a different product or paid significantly less for it. Alternatively, had Plaintiff been aware that the Product was falsely labeled she would not have purchased the Product at all.

32.     By the use of misleading representations, Defendant created increased market demand for the Products and increased its market share relative to what its demand and share would have been had it marketed the Products truthfully.

33.     Plaintiff and members of the Classes were exposed to and justifiably relied upon the same material misrepresentations (i.e., the Protein Representation) throughout the class period. Specifically, each of the Products contain a Protein Representation, and each of the Products do not contain the amount of protein promised in the Protein Representation. As such, this case fits squarely within the parameters for class certification.

## **CLASS ACTION ALLEGATIONS**

34.     Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**
All residents of California who purchased the Products within the applicable statute of limitation ("California Class").

**California Consumer Subclass**

All residents of California who purchased the Product for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the California Class, the "Classes").

35.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

36.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

37.     Plaintiff is a member of all the Classes.

38.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records or through sales data. At a minimum, there likely are tens of thousands of Class members.

39.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

a.     whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b.  whether reasonable consumers would rely upon Defendant's representations about the Product and reasonably believe the Product's Protein Representation;

c.  whether Defendant knew or should have known its representations were false or misleading;

d.  whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e.  whether certification of each Class is appropriate under Rule 23;

f.  whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g.  the amount and nature of the relief to be awarded to the Plaintiff and the Class, including whether Plaintiff and the Class are entitled to punitive damages.

40.  **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Classes relied on the representations made by the Defendant about the Products prior to purchasing the Product. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

41.  **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

42.     **<u>Predominance</u>:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

43.     **<u>Superiority</u>:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

44.     **<u>Declaratory and Injunctive Relief</u>:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750,** *et seq.*
(*For the California Consumer Subclass*)

45.     Plaintiff repeats the allegations contained in paragraphs 1-44 above as if fully set forth herein.

46.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

47.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

48.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By promising a specific number of grams of protein in the Products' Protein Representation on the Products' front labeling, Defendant has represented and continues to represent that the Products have characteristics (i.e., provide a certain number of grams of protein) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

49.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By promising a specific number of grams of protein in the Products' Protein Representation on the Products' front labeling, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., provide a certain number of grams of protein) that they do not meet. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

50.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By promising a specific number of grams of protein in the Products' Protein Representation on the Products' front labeling, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

-17-

51.     At all relevant times, Defendant has known or reasonably should have known that the Protein Representation is false, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the Products' Protein Representation when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing they are receiving more protein from the Products than they are actually receiving.

52.     Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

53.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products do not contain the grams of protein as promised on the Products' front labels.

54.     Under Cal. Civ. Code § 1782, on January 25, 2022, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendant, outlining that Defendant has violated the CLRA for the reasons described herein. Defendant responded on February 22, 2022, and as of yet, has refused to take any action to rectify this misconduct. Because Defendant has failed to fully rectify the issues within 30 days after receipt of the notice and demand letter, Plaintiff timely filed the Class Action Complaint for a claim for damages under the CLRA.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500**, *et seq*
(*For the California Class*)

55.     Plaintiff repeats the allegations contained in paragraphs 1-44 above as if fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

57.    The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

58.    Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class, through its deceptive packaging, that the Products provide more protein than they actually contain. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

59.    As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to them and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the California Class*)**

60.    Plaintiff repeats the allegations contained in paragraphs 1-44 above as if fully set forth herein.

61.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200 ("UCL").

62.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

63.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed California Class.

64.     Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers into believing they will receive the grams of protein promised on the front packaging of the Products, but providing fewer grams of protein than advertised, is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

65.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing they will receive more protein than what is promised on the front packaging of the Products. Because Defendant misled Plaintiff and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

66.     Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from

violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
(***For the California Class***)

67.     Plaintiff repeats the allegations contained in paragraphs 1-44 above as if fully set forth herein.

68.     Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

69.     California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

70.     Defendant has expressly warranted on the Products' front packaging that the Products contain a specific number of grams of protein as stated on the Products' Protein Representation (e.g., "20g HIGH PROTEIN). However, as alleged herein, these express representations are false and misleading. The Products contain far fewer grams of protein than explicitly represented on the Products' Protein Representation.

71.     The Protein Representations on the Products' front labels are: (a) an affirmation of fact or promise made by Defendant to consumers that the Products contain the specific number of grams of protein promised on the Protein Representation; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

-21-

72.     Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

73.     Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products with the grams of protein promised on the Products' front label.

74.     Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

75.     On or around December 2021, Plaintiff discovered that Defendant breached its express warranty, and on January 25, 2022, Plaintiff sent a notice letter by certified mail to Defendant, notifying Defendant of the breach. Defendant responded on February 22, 2022, and as of yet, has refused to take any action to rectify this misconduct.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2313**
(*For the California Class*)

76.     Plaintiff repeat the allegations contained in paragraphs 1-44 above as if fully set forth herein.

77.     Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of implied warranty under Cal. Com. Code §2314.

78.     California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).

79.     California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

80.     Defendant is a merchant with respect to the sale of Products. Therefore, a warranty

-22-

of merchantability is implied in every contract for sale of the Products to California consumers.

81.     By advertising the Products with the Protein Representations on the Products' front label, Defendant made an implied promise on the container that the Products contain the specific number of grams of protein.  The Products, however, have not "conformed to the promises…made on the container or label" because the Products contain far fewer grams of protein as promised on the Products' front label. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

82.     If Plaintiff and members of the California Class had known that the Products' Protein Representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

**SIXTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
(***for the Classes***)

83.     Plaintiff repeats the allegations contained in paragraphs 1-44 above as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant for unjust enrichment.

85.     As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the California Class to induce them to purchase the Products. Plaintiff and members of the California Class have reasonably relied on the misleading representations and have not received all of the benefits (i.e., grams of protein) promised by Defendant through the Products' Protein Representations. Plaintiff and members of the proposed California Class have therefore been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

-23-

86.     Plaintiff and members of the proposed California Class have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the proposed California Class.

87.     The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed California Class—i.e., Plaintiff and members of the proposed California Class did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them.

88.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed California Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
***(for the Classes)***

89.     Plaintiff repeats the allegations contained in paragraphs 1-44 above as if fully set forth herein.

90.     Plaintiff brings this claim individually and on behalf of the members of the Classes for common law fraud.

91.     Defendant has willfully, falsely, and knowingly misrepresented the Products' amount of protein through the Products' Protein Representation, as they knew that the Products' contained less grams of protein per serving than represented.

92.     Defendant has therefore made knowing, fraudulent misrepresentations as to the Products.

93.     Defendant's misrepresentations were material (i.e., they affected Plaintiff and members of the Classes' purchasing decisions given their importance), because they relate to the central functionality of the Products as nutritional shake mixes, given that the Products contain fewer grams of protein than advertised.

-24-

94.    Defendant knew or recklessly disregarded the fact that the Products did not contain the number of grams of protein as promised in the Products' Protein Representation.

95.    Defendant intended that Plaintiff and members of the Classes rely on the Protein Representation, as if they had known the truth of the protein levels in the Products, they would have less for the Products or would not have purchased them at all.

96.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, and if Plaintiff and members of the Classes had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

97.    For these reasons, Plaintiff and members of the Classes have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the proposed California Class defined above, appointment of Plaintiff as Class representative, and appointment of their counsel as Class counsel;

B.    A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed California Class, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D.    An award to Plaintiff and the proposed California Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust

enrichment that Defendant obtained from Plaintiff and the proposed California Class as a result of its unlawful, unfair and fraudulent business practices described herein;

E.      An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.      An award of nominal, punitive, and statutory damages;

H.      An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

I.      An award to Plaintiff and the proposed California Class of pre and post-judgment interest, to the extent allowable; and

J.      For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: July 8, 2022                          **CUSTODIO & DUBEY, LLP**

By:   ___/s/ Robert Abiri_____

Robert Abiri (SBN 238681)
*E-mail: abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorney for Plaintiff and the*
*Putative Classes*