**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899
E-mail: abiri@cd-lawyers.com

**TREEHOUSE LAW, LLP**
Joshua Nassir (SBN 318344)
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
jnassir@treehouselaw.com
bheikali@treehouselaw.com
rglezakos@treehouselaw.com

*Attorneys for Plaintiff Elena Nacarino*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ELENA NACARINO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KSF ACQUISITION CORPORATION,<br><br>Defendant. | Case No.: 3:22-cv-04021-MMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date: October 21, 2022<br>Time:  9:00 a.m.<br>Courtroom: 7, 19th Floor<br>Judge:  Hon. Maxine M. Chesney |

## **TABLE OF CONTENTS**

I.      INTRODUCTION................................................................................................ 1

II.     STATEMENT OF FACTS.................................................................................... 1

III.    LEGAL STANDARD........................................................................................... 3

IV.     ISSUES TO BE DECIDED...................................................................................4

V.      ARGUMENT ....................................................................................................... 4

        A.      Plaintiff Has Standing To Pursue Injunctive Relief......................................4

        B.      Plaintiff Has Standing To Challenge Similarly Advertised Products...........7

        C.      Plaintiff Has Adequately Alleged Her Claims for Equitable Relief............9

        D.      Plaintiff Adequately Pleads Her Claims Under the CLRA, UCL, and FAL...........11

                1.      The Reasonable Consumer Standard Applies to Plaintiff's Claims..............11

                2.      Plaintiff Alleges Plausible Deception Under The Reasonable Consumer
                        Standard..............................................................................................12

                3.      Plaintiff Adequately Pleads Violations of the UCL and FAL........................18

        E.      Plaintiff Adequately Alleges Her Breach of Implied Warranty Claims....................19

        F.      Plaintiff Has Adequately Alleged Her Express Warranty Claims.............................21

        G.      Plaintiff Has Adequately Pled A Claim For Unjust Enrichment...............................22

        H.      Plaintiff's Common Law Fraud Claim Should Survive...............................................23

        I.      The CLRA Pre-Suit Notice Requirement Is Satisfied.................................................24

IV.     CONCLUSION ...........................................................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
  No. 8:20-CV-00913-JWH-DFMx, 2021 WL 4907248 (C.D. Cal. Mar. 1, 2021) .................11

*Angiano v. Anheuser-Busch Inbev Worldwide, Inc.*,
  532 F.Supp.3d 911 (C.D. Cal. 2021) ...................................................................................21

*Anthony v. Pharmavite*,
  2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ..........................................................................15

*Arora v. GNC Holdings, Inc.*,
  No. 19-CV-02414-LB, 2019 WL 6050750 (N.D. Cal. Nov. 15, 2019)...................................6

*Arroyo v. TP-Link USA Corp.*,
  No. 5:14-CV-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015)............................24

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013) .................................................................................25

*Ashton v. J.M. Smucker Co.*,
  No. EDCV 20-992 JGB (SHKx), 2020 WL 8575140 (C.D. Cal. Dec. 16, 2020) .............10, 19

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  No. C 10- 4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ......................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................3, 23

*Benavides v. Kellogg Co.*,
  No. CV 10-2294-JST, 2011 WL 13269720 (C.D. Cal. Mar. 21, 2011)...................................19

*Brazil v. Dole Food Co., Inc.*,
  No. 12-CV-01831-LHK, 2013 WL 5312418 (N.D. Cal. Sept. 23, 2013)................................8

*Brown v. Hain Celestial Group, Inc.*,
  913 F.Supp.2d 881 (N.D. Cal. 2012) ...................................................................................17

*Brown v. Natures Path Foods, Inc.*,
  No. 21-CV-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ........................ *passim*

*Chapman v. Skype Inc.*,
  220 Cal. App. 4th 217 (2013) .............................................................................................18

*Cimoli v. Alacer Corp.*,
  546 F. Supp. 3d 897 (N.D. Cal. 2021) ............................................................................8, 15

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ........................................................................19

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ..........................................................................23

*David v. Baker*,
    129 F. App'x 358 (9th. Cir. 2005) .....................................................................3

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ............................................................................7

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ..........................................................................14

*Edleson v. Travel Insured Int'll, Inc., No. 21-CV-323-WQH-AGS*,
    2021 WL 4334075 (S.D. Cal. Sept. 23, 2021) ...............................................11

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...........................................................12

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-cv-2484(JS) (AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015)..........24

*Estakhrian v. Obenstine*,
    233 F. Supp. 3d 824 (C.D. Cal. 2017) ...........................................................11

*Hadley v. Kellogg Sales Co.*,
    273 F. Supp. 3d 1052 (N.D. Cal. 2017) .........................................................22

*Hall v. Diamond Foods, Inc.*,
    No. C-14-2148 MMC, 2014 WL 3779012 (N.D. Cal. July 31, 2014)..............14, 23

*Hall v. Diamond Foods, Inc.*,
    No. C-14-2148 MMC, 2014 WL 5364122 (N.D. Cal. Oct. 21, 2014)....................17

*Heredia v. Sunrise Senior Living LLC*,
    No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159 (C.D. Cal. Feb. 10, 2021) .........10

*Jackson v. General Mills, Inc.*,
    No. 18cv2634-LAB (BGS), 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020)............7

*Johnson v. Triple Leaf Tea Inc.*,
    No. C-14-1570 MMC, 2014 WL 4744558 (N.D. Cal. Sept. 23, 2014) ...........18, 19

*Joslin v. Clif Bar & Co.*,
    No. 4:18-CV-04941-JSW, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .............7

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ...........................................................................22

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Locklin v. StriVectin Operating Co., Inc.*,
    No. 21-CV-07967-VC, 2022 WL 867248 (N.D. Cal. Mar. 23, 2022)....................................15

*Lozano v. Bowmar Nutrition LLC*,
    No. 2:21-CV-04296-MCS-KS, 2021 WL 4459660 (C.D. Cal. Aug. 19, 2021) .......................9

*Luong v. Subaru of Am., Inc.*,
    No. 17-CV-03160-YGR, 2018 WL 2047646 (N.D. Cal. May 2, 2018) ................................11

*Madenlian v. Flax USA Inc.*,
    2014 WL 7723578 (C.D. Cal. Mar. 31, 2014)...........................................................16

*Maroney v. KSF Acquisition Corporation.*,
    No. 20-cv-2788-CS ...........................................................................................16

*Mexicali Rose v. Super. Ct.*,
    1 Cal. 4th 617 (1992) ........................................................................................19

*Minkler v. Apple, Inc.*,
    65 F.Supp.3d 810 (N.D. Cal. 2014) ......................................................................21

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ..........................................................................7, 8

*Morley v. Walker*,
    175 F.3d 756 (9th Cir. 1999) ................................................................................4

*Morris v. Mott's LLP*,
    2019 WL 948750 (C.D. Cal. 2019)........................................................................20

*Prescott v. Bayer HealthCare LLC*,
    No. 20-cv-00102-NC, 2020 WL 4430958 (N.D. Cal. July 31, 2020) ...............................7

*Prescott v. Reckitt Benckiser LLC*,
    No. 20-CV-02101-BLF, 2020 WL 7075624 (N.D. Cal. Dec. 3, 2020) ...........................12, 18

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ................................................................................3

*Rhynes v. Stryker Corp.*,
    No. 10-cv-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011).................................11

*Romero v. Flowers Bakeries, LLC*,
    No. 14-CV-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016)..................................8

*Scilex Pharm. Inc. v. Sanofi-Aventis U.S. LLC*,
    552 F. Supp. 3d 901 (N.D. Cal. 2021) ..................................................................22

*Shank v. Presidio Brands, Inc.*,
    No. 17-CV-00232-DMR, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018)..............................6

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Sharma v. BMW of N. Am., LLC,*
　No. C-13-2274 MMC, 2015 WL 82534 (N.D. Cal. Jan. 6, 2015) ............................................9

*Sonner v. Premier Nutrition Corp.,*
　971 F.3d 834 (9th Cir. 2020) ........................................................................................10, 11

*Sperling v. Stein Mart, Inc.,*
　2016 WL 11265686 (C.D. Cal. Mar. 15, 2016) ....................................................................16

*Starr v. Baca,*
　652 F.3d 1202 (9th Cir. 2011) ..........................................................................................18

*Stewart v. Kodiak Cakes, LLC,*
　537 F. Supp. 3d 1103 (S.D. Cal. 2021) ................................................................................17

*Swingless Golf Club Corp. v. Taylor,*
　679 F. Supp. 2d 1060 (N.D. Cal. 2009) ..........................................................................23, 24

*Tappana v. Am. Honda Motor Co.,*
　No. CV219046DSFPLAX, 2022 WL 2526971 (C.D. Cal. July 5, 2022) ................................9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods.
　Liab. Litig.,*
　754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................................25

*Traction v. Viva Labs, Inc.,*
　2017 WL 4125053 (S.D. Cal. Sept. 18, 2017) ......................................................................20

*Tucker v. Post Consumer Brands, LLC,*
　No. 19-CV-03993-YGR, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ................................5

*Vizcara v. Unilever United States, Inc.,*
　No. 4:20-cv-02777, 2020 WL 4016810 (N.D. Cal. July 16, 2020) ........................................25

*Walters v. Vitamin Shoppe Indus.,*
　701 F. App'x 667 (9th Cir. 2017) ..................................................................................14, 15

*Warren v. Whole Foods Mkt. California, Inc.,*
　No. 21-CV-04577-EMC, 2022 WL 2644103 (N.D. Cal. July 8, 2022)..................................11

*White v. Kroger Co.,*
　No. 21-CV-08004-RS, 2022 WL 888657 (N.D. Cal. Mar. 25, 2022) ....................................20

*Williams v. Gerber*
　552 F.3d 934 (9th Cir. 2008) ....................................................................................5, 12, 22

*Yumul v. Smart Balance, Inc.,*
　733 F. Supp. 2d 1117 (C.D. Cal. 2010) ..............................................................................12

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Zeiger v. WellPet LLC,*
    No. 3:17-CV-04056-WHO, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ............................10

**Statutes**

Cal. Comm. Code § 2314(2)(f) ....................................................................................................20

Cal. Comm. Code § 2314(2)(c) ...................................................................................................20

Cal. Civ. Code § 1750, *et seq.* ............................................................................................ *passim*

Cal. Bus. & Prof. Code § 17500, *et seq* ............................................................................ *passim*

Cal. Bus. & Prof. Code § 17200, *et seq* ............................................................................ *passim*

Fed. R. Civ. P. 8 ...................................................................................................................11, 23

Fed. R. Civ. P. 9(b) .............................................................................................................23, 24

Fed. R. Civ. P. 12(b)(6) .............................................................................................................3

**Other Authorities**

21 C.F.R. § 101.9(h)(4) .................................................................................................6, 13, 15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# I.    INTRODUCTION

This is a simple case of false advertising. On the front label of all the SlimFast Products (defined below), Defendant conspicuously represents that each serving of the Products will provide a specific amount of protein. Despite these explicit representations, however, the Products do not contain the represented amount of protein. Defendant's deception leads to a staggering shortfall in the amount of protein consumers receive, with some of the Products failing to provide a considerable 80% of the promised grams of protein.

Despite Defendant's front label protein representations, Defendant puts the onus on consumers to dig for the truth about its Products' protein levels, contending that consumers should have read the Products' back label. However, there is no legal support for this contention, and it is contrary to consumer behavior. Consumers justifiably trust that meal replacement shakes tell the truth about their nutritional content on their front labels, and rarely, if ever, do they find these statements to be qualified based on added ingredient(s) on their back label. Defendant's expectation that consumers double-check its front label statements on other parts of the product not only belies how real consumers behave, but such unordinary conduct is explicitly not required under California and Ninth Circuit law. Indeed, Defendant's precise misconduct of misrepresenting protein levels on the front label, and attempting to clarify it on the back label, has been recently condemned by courts in this District. *See e.g., Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *7 (N.D. Cal. Mar. 10, 2022) (discussed *infra*).

At the very least, the question of how consumers interact with the Products' packaging is a question of fact for a later stage. For these reasons, and as further set forth below, Defendant's Motion to Dismiss Plaintiff's Class Action Complaint ("Mot.") (ECF No. 22) should be denied in its entirety.

# II.   STATEMENT OF FACTS

This putative consumer class action challenges Defendant KSF Acquisition Corporation's ("Defendant") false and misleading labeling practices for its SlimFast smoothie and shake mix products (the "Products").[1] Plaintiff Elena Nacarino ("Plaintiff") alleges that Defendant, one of the

---

[1] The Products include the following: (1) SlimFast Original Meal Replacement Shake Mix; (2) SlimFast Advanced Nutrition Smoothie Mix; (3) SlimFast Diabetic Weight Loss Meal Shake; and (4) SlimFast Advanced Immunity Smoothie Mix.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

nation's leading manufacturers of smoothie and shake mixes, grossly overrepresents the amount of protein in its Products. Class Action Complaint ("CAC") (ECF No. 1) ¶¶ 1-2. Specifically, on the front label of each of the Products, Defendant has placed a prominent representation promising a specific number of grams of protein (*e.g.*, "20g HIGH PROTEIN," "10g PROTEIN," etc.) (all front label representations about the amount of protein are hereinafter collectively referred to as the "Protein Representations"). *Id.* ¶¶ 3, 16, 18. Reasonable consumers understand this message simply: each serving of the Products' smoothie/shake mix contains the number of grams of protein promised in the front label Protein Representations. *Id.* ¶¶ 3, 11. Below is an example from the CAC (¶16):

Unbeknownst to consumers however, Defendant's Products contain far fewer grams of protein than what is promised in the Protein Representations. *Id.* ¶¶ 4, 17. Instead, the Products require that *milk be added* in order to obtain the number of grams of protein advertised in the Protein Representations, a material fact that is *not disclosed* on the front label of any of the Products. *Id.* ¶¶ 16, 20. In the above pictured Product for example, while the front label promises 20 grams of protein per serving, the mix only contains 12 grams of protein. *Id.* ¶¶ 16-17. Another example is the Original

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1   Product, which fails to provide a considerable **80% of the promised grams of protein**. *Id.* ¶ 18. The

2   other Products suffer from the same false advertising. *Id.* ¶¶ 18-19.

3         Plaintiff and other consumers purchased the Products during the class period, and based on

4   the Protein Representations, reasonably expected that the Products themselves contained the amount

5   of protein promised in the Protein Representations. *Id.* ¶¶ 6, 11. Indeed, numerous complaints by

6   other purchasers of the Products demonstrate that the deception experienced by Plaintiff was not an

7   isolated experience. *Id.* ¶ 22 (listing complaints from purchasers of the Products on Defendant's

8   "SlimFast Store" on Amazon.com).[2] Moreover, Defendant's Protein Representations are even more

9   deceptive given the fact that most, if not all, of its direct competitors correctly advertise the amount

10  of protein on their front labels without concealing that other ingredients, such as milk, must be added

11  to obtain their nutritional representations. *Id.* ¶¶ 23-26 (depicting competitor smoothie/shake mixes).

12  Thus, consumers comparing dietary supplements do not reasonably know that they must purchase

13  additional products, such as milk, to attain the nutritional value promised by the dietary shakes/mixes

14  which they seek to purchase.

15        Had Plaintiff and other consumers known that they must add milk to obtain the grams of

16  protein promised in the Protein Representations, they would not have purchased the Products or

17  would have paid less for them. *Id.* ¶¶ 6, 11. As a result, Plaintiff and other consumers have suffered

18  an injury in fact as a result of Defendant's deceptive marketing. *Id.*

19  **III.   LEGAL STANDARD**

20        On a motion to dismiss pursuant to Rule 12(b)(6), it is the defendant's burden to show that

21  the plaintiff cannot state a claim for relief. *David v. Baker*, 129 F. App'x 358, 360 (9th. Cir. 2005).

22  The court "must accept as true" all well pleaded facts in the complaint and construe them in the light

23  most favorable to the nonmoving party. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of*

24  *Am.*, 768 F.3d 938, 945 (9th Cir. 2014). To survive a motion to dismiss, the plaintiff must only allege

25  enough facts to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*,

26

27  [2] While Defendant points to its overall positive reviews on Amazon to imply that consumers are not misled, *see* Mot. at 17, n.2, this only reveals that consumers have not yet discovered Defendant's

28  deception. In any event, Defendant's argument improperly wades into a clear issue of fact, which is not appropriate for resolution at the pleading stage without the benefit of discovery.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

550 U.S. 544, 555 (2007). "A dismissal for failure to state a claim is appropriate only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

## IV.  ISSUES TO BE DECIDED (Civil Local Rule 7-4(a)(3))

(1) Whether Plaintiff has standing to seek injunctive relief; (2) whether Plaintiff has standing to pursue claims for similarly-advertised and non-purchased Products; (3) whether Plaintiff can maintain her claims for equitable relief; (4) whether Plaintiff has sufficiently pled violations of California's consumer protection statutes: Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), Cal. Civ. Code § 1750, *et seq.* ("CLRA"), Cal. Bus. & Prof. Code § 17500, *et seq* ("FAL"); (5) whether Plaintiff has sufficiently pled her implied warranty claim; (6) whether Plaintiff has sufficiently pled her express warranty claim; (7) whether Plaintiff has sufficiently pled her quasi-contract claim for unjust enrichment; (8) whether Plaintiff has sufficiently pled her fraud claim; and (9) whether the pre-suit notice requirements under the CLRA have been satisfied.

## V.  ARGUMENT

### A.  <u>Plaintiff Has Standing To Pursue Injunctive Relief</u>

Defendant argues that because Plaintiff is now aware that the Protein Representations are false, "[s]he does not face any threat of actual and imminent injury." Mot. at 9. Defendant's argument, boiled down to its essence, is that injunctive relief cannot exist in consumer class actions. Not so. "In the context of false advertising cases, the Ninth Circuit has explained that a plaintiff may establish the risk of future harm in two ways: (1) the consumer's plausible allegations that they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) the consumer's plausible allegations that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved." *Brown*, 2022 WL 717816, at *5 (citing *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018)).

The court's opinion in *Brown* is directly on point here. Just as in this case, the plaintiffs in *Brown* sought injunctive relief where the labeling of the at-issue granola misrepresented the amount of protein contained therein, despite having an additional "per serving with milk" disclosure on the

4

front label, which the court found to be insufficiently conspicuous. *Id.* at \*2, 5-6. In denying the defendant's motion to dismiss, the court held that the plaintiffs sufficiently plead a claim for injunctive relief where they alleged that they "(1) continue to desire to purchase Nature's Path products; (2) would likely purchase the products again in the future if they were reformulated to contain the amount of protein represented on the labels; and (3) regularly visit stores where Nature's Path products are sold." *Id.* at \*5.

Plaintiff's claim for injunctive relief mirrors the claim for injunctive relief in *Brown* and, therefore, should receive the same outcome. Specifically, Plaintiff alleges that she: (1) "would purchase the Products, as advertised, if they actually provided the grams of protein in the Products"; (2) "regularly shops at stores that carry the Products" and (3), "absent an injunction of Defendant's deceptive advertising, she will be unable to rely with confidence on Defendant's advertising of the Products in the future." CAC ¶ 12. In other words, absent an injunction, Plaintiff will be unable to rely on the Products' labeling to accurately represent the number of protein grams contained in the Products. *Id.* This is sufficient to establish standing to seek injunctive relief.

In its Motion, Defendant argues that Plaintiff is unlikely to be injured in the future because she can determine the veracity of the front label Protein Representations by "check[ing] the Nutrition Facts panel for the protein amounts per scoop and as prepared, which she has not alleged are inaccurate in anyway." Mot. at 9. Defendant's expectation that Plaintiff must be vigilant and investigate Defendant's front label Protein Representations in the future is neither supported by typical consumer behavior nor expected by the Ninth Circuit's decision in *Williams v. Gerber*, which held that consumers are ***not*** expected or required to investigate a product's back labels for clarifying information. 552 F.3d 934, 939 (9th Cir. 2008). For this reason, Defendant's flawed argument that Plaintiff is precluded from seeking injunctive relief because the Products' back label contains a Nutrition Facts Panel has been rejected by courts in this District. *See, e.g., Tucker v. Post Consumer Brands, LLC*, No. 19-CV-03993-YGR, 2020 WL 1929368, at \*6 (N.D. Cal. Apr. 21, 2020) ("Absent injunctive relief, plaintiff would not know whether honey is in fact a significant sweetener in defendant's product based on the ***front*** of the cereal box. Nor is the onus on plaintiff to consult the ingredient list to try to discern this fact.") (emphasis added). That is particularly true here where the

1   disclosures linked to Products' asterisks fail to cure the misstatements contained in the Protein

2   Representations, in violation of pertinent FDA regulations (discussed further in the following

3   paragraph). *See Arora v. GNC Holdings, Inc.,* No. 19-CV-02414-LB, 2019 WL 6050750, at *15 (N.D.

4   Cal. Nov. 15, 2019) ("[E]ven if the asterisk links to a disclaimer, the plaintiffs' claim of confusion is

5   predicated on a non-compliant back-panel disclaimer."); *Shank v. Presidio Brands, Inc.*, No. 17-CV-

6   00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) ("Shank's ability to read the

7   products' ingredients does not render Presidio's allegedly false advertising that the products contain

8   'only naturally-derived' ingredients 'any more truthful.'") (citation omitted).

9       Further, Defendant misstates the facts. First, as Defendant concedes, the asterisk tied to the

10  Protein Representations do not lead to the Nutrition Facts panel of the Products. Instead, those

11  asterisks lead to a disclosure buried at the bottom of their side panels, which state "PER SHAKE [OR

12  SMOOTHIE] AS PREPARED WITH FAT FREE MILK." Mot. at Exs. 1-4. Aside from being

13  inconspicuous, these side panel disclosures fail to cure the Protein Representations because they do

14  not indicate the **quantity** of milk and number of scoops necessary to arrive at the advertised Protein

15  Representations. *See* 21 C.F.R. § 101.9(h)(4) (requiring "as prepared" claims to conspicuously

16  disclose the "quantity of the other ingredients to be added to the product."). Although Defendant

17  contends that the Nutrition Facts panel on the back of the Products provides this additional

18  information, there is no guarantee that the Products' **side panel** disclosures and **back panel** disclosures

19  **will always** be correlated. As such, Defendant's contention that Plaintiff does not face the prospect of

20  future injury because she can "instantly check the Nutrition Facts panel" to see if the Protein

21  Representations are true is unfounded.

22      Defendant further contends that Plaintiff does not challenge that the Products' Nutrition Facts

23  panel are not "inaccurate in any way." Mot. at 9. But this is a red herring. It is not the Products'

24  Nutrition Facts panels, but rather, the Products' front label Protein Representations that Plaintiff take

25  issue with. And given that those two statements are not linked, even by the existing inconspicuous

26  asterisks, it remains possible that Defendant can reformulate the Products in such a way that its front

27  label "as prepared" Protein Representations no longer conform to either of the dual-columns of the

28  Nutrition Facts panels—leaving Plaintiff with no way of determining how the Protein Representations

were calculated.

Thus, Defendant's argument, which would foreclose on all standing to pursue injunctive relief in similar consumer class actions, should be rejected. *Prescott v. Bayer HealthCare LLC*, No. 20-cv-00102-NC, 2020 WL 4430958, at *6 (N.D. Cal. July 31, 2020) (relying on *Davidson*, holding that "it is not clear why the burden to avoid future misunderstanding lies with Plaintiffs and not Defendants when it is Defendants' actions that are allegedly unlawful. After all, if the ability to fully review a product label automatically defeats standing for injunctive relief, it is difficult to imagine any mislabeling and formulation case where injunctive relief would be appropriate.").[3]

**B.    Plaintiff Has Standing To Challenge Similarly Advertised Products**

Defendant does not, and cannot, contest that each and every Product's front label plainly represents a specific number of grams of protein, or that each of the shake/smoothie mixes does not provide the amount of protein represented on the front label. Despite this common scheme of advertising, Defendant argues that Plaintiff does not have standing to pursue claims challenging nearly identical representations because Plaintiff has not alleged that she purchased these Products. Mot. at 9-12. While Defendant admits that numerous courts have recognized that plaintiffs have standing to pursue unpurchased products when their advertising is substantially similar, Defendant argues that there is a "split" in authority as to whether standing is proper in such situations. *Id.*

Defendant neglects to inform this Court that the ***Ninth Circuit*** has already decided this issue. Indeed, in *Moore*, the defendants "argue[d] that Plaintiffs do not have standing to enjoin all of Defendant Manufacturers' prescription pet food products because Plaintiffs have not purchased every single type of prescription pet food available from Hill's or Mars." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020). The Ninth Circuit rejected this argument, holding that "[t]his does not constitute a basis for dismissal because Plaintiffs' challenge to prescription pet foods is to the ***common scheme*** of the prescription requirement and prescription-based advertising." *Id.*

---

[3] Defendant's citation to *Joslin v. Clif Bar & Co.* is inapposite because, in that case, the plaintiffs did "not allege [that] they want to or intend to purchase the Products in the future." No. 4:18-CV-04941-JSW, 2019 WL 5690632, at *3 (N.D. Cal. Aug. 26, 2019). Here, Plaintiff has clearly alleged an intention and desire to purchase the Products. CAC ¶ 12. Moreover, *Jackson v. General Mills, Inc.*, No. 18cv2634-LAB (BGS), 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020), a case heavily relied on by Defendant, is inconsistent with the holding in *Williams* and the weight of the authority in this District.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1   Here, it is unmistakable that Defendant has engaged in a common scheme, where Defendant

2   represents each Product's protein level on the front label, but chooses to omit that this amount is only

3   achievable by adding additional ingredients. This Court should follow the weight of the authority,

4   including the guidance of the Ninth Circuit, and apply the substantial similarity test. The facts of this

5   case clearly demonstrate that the false representations and resulting injuries are nearly identical for

6   all putative class members. Thus, Plaintiff has standing to pursue claims for unpurchased products on

7   behalf of the putative class for claims under the UCL, FAL, and CLRA.

8   Other courts, prior to and after *Moore*, are in accord. *See e.g., Romero v. Flowers Bakeries,*

9   *LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *10 (N.D. Cal. Feb. 8, 2016) ("The Ninth Circuit

10   has held that in 'determining what constitutes the same type of relief or the same kind of injury, we

11   must be careful not to employ too narrow or technical an approach. Rather, we must examine the

12   questions realistically: we must reject the temptation to parse too finely, and consider instead the

13   context of the inquiry.'") (citing *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001)); *Brazil v.*

14   *Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013)

15   ("This is the entire point of the substantially similar approach: by limiting a plaintiff's ability to sue

16   over products he did not purchase to situations involving claims and products that are substantially

17   similar to those products he did purchase, courts ensure that the plaintiff is seeking to represent only

18   those individuals who have suffered *essentially the same injury as the plaintiff*.") (emphasis added);

19   *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 908–09 (N.D. Cal. 2021) (holding that Plaintiff has

20   standing to bring claims under the UCL, FAL, and CLRA on behalf of purchasers of several

21   unpurchased dietary gummies because "[t]he alleged misrepresentations, listing a specific quantity of

22   a specific ingredient without indicating whether the quantity is per gummy or per serving, are nearly

23   identically displayed on the Products.").[4]

24   Cases such as *Lorentzen*, which Defendant heavily relies on, stand in stark opposition to the

25

26   ───────────────

[4] While Defendant makes a separate argument that Plaintiff lacks "statutory standing under the UCL,
27   FAL, and CLRA with respect to the Products she did not actually purchase," Mot. at 11, this analysis
   is subsumed into the substantial similarity test. *See e.g., Cimoli*, 546 F. Supp. 3d at 908–09 (extending
28   standing to pursue claims for unpurchased products under the UCL, FAL, and CLRA based on the
   substantial similarity test).

weight of authority in this Circuit, including the Ninth Circuit, and should therefore be rejected. Indeed, even *Lozano*, *which Defendant cites to in support*, has established that "[t]he "prevailing view"" of courts determining which approach to follow "is the second, middle-ground approach," "holding that sufficient or substantial similarity between the purchased and non-purchased products satisfies the standing requirement for the non-purchased products." *Lozano v. Bowmar Nutrition LLC*, No. 2:21-CV-04296-MCS-KS, 2021 WL 4459660, at *3 (C.D. Cal. Aug. 19, 2021) (citing to *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1083 (N.D. Cal. 2014)). At the very least, this Court should wait until the class certification stage to adjudicate this issue. *Sharma v. BMW of N. Am., LLC*, No. C-13-2274 MMC, 2015 WL 82534, at *2 (N.D. Cal. Jan. 6, 2015) ("According to BMW, the named plaintiffs' claims are not typical of persons who purchased or leased a model different from the model purchased by each named plaintiff. In light of plaintiffs' allegation that the same defect exists in each of the Class Vehicles, however, the Court declines to find at the pleading stage that plaintiffs claims are not typical of those of persons who purchased or leased different models of Class Vehicles.") (Chesney, J.); *Tappana v. Am. Honda Motor Co.*, No. CV219046DSFPLAX, 2022 WL 2526971, at *3 (C.D. Cal. July 5, 2022) (rejecting *Lorentzen*, finding that "this is an argument more appropriately addressed at the class certification stage of the proceedings.").

Thus, the facts of this case clearly demonstrate that the false representations and resulting injuries are nearly identical for all putative class members. For these reasons, Plaintiff has standing to pursue claims under California's consumer protection statutes for unpurchased products.

**C.** **Plaintiff Has Adequately Alleged Her Claims for Equitable Relief**

Defendant contends that Plaintiff fails to plead any claim for equitable relief because she fails to allege facts plausibly establishing that her legal remedies are inadequate. Mot. at 12-14.

As an initial matter, Defendant uses the broad umbrella term "equitable relief" to describe two types of relief in equity: relief for past harm (i.e., restitution), and relief for *future* harm (i.e., injunctive relief). Each has a separate and distinct legal basis. As to Plaintiff's claim for injunctive relief, there is no question that Plaintiff lacks an adequate remedy at law. Whereas money damages are available for *past harm*, Plaintiff's claim for injunctive relief seeks to change Defendant's **ongoing** deceptive conduct (i.e., to prevent future harm). CAC ¶ 12 ("[A]bsent an injunction of Defendant's deceptive

1   advertising, she will be unable to rely with confidence on Defendant's advertising of the Products *in*
2   *the future*.") (emphasis added).

3          This distinction is precisely what makes Defendant's primary authority in support of its
4   argument, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), inapposite. *Id.*
5   (finding that "[i]njunctive relief is not at issue," and that as to monetary relief for past harm, the
6   plaintiff had an adequate remedy of law when she "concede[d] that she seeks the same sum in
7   equitable restitution as her "requested in damages[.]"). Following this reasoning, several courts have
8   refused to apply *Sonner* when plaintiff asserts a claim for injunctive relief, just like here, because it
9   is based on future farm. *See e.g.*, *Brown*, 2022 WL 717816, at *6 (". . . [*Sonner*] did not purport to
10  disturb the well-established rule that equitable and damages claims may coexist when they are based
11  on different theories. Here, the Complaint alleges sufficient facts from which the Court can reasonably
12  infer that Nature's Path's conduct exposes Plaintiffs to prospective injuries for which remedies at law
13  would be inadequate.") (internal citation omitted); *Zeiger v. WellPet LLC*, No. 3:17-CV-04056-WHO,
14  2021 WL 756109, at *21 (N.D. Cal. Feb. 26, 2021) ("Assuming that *Sonner* applies to injunctive
15  relief, Zeiger has shown that monetary damages for past harm are an inadequate remedy for the future
16  harm that an injunction under California consumer protection law is aimed at Zeiger's remedy at law,
17  *damages, is retrospective. An injunction is prospective*. Damages would compensate Zeiger for his
18  past purchases. An injunction would ensure that he (and other consumers) can rely on WellPet's
19  representations in the future.") (emphasis added); *Heredia v. Sunrise Senior Living LLC*, No. 8:18-
20  cv-01974-JLS-JDE, 2021 WL 819159, at *8 (C.D. Cal. Feb. 10, 2021) (same); *Ashton v. J.M. Smucker*
21  *Co.*, No. EDCV 20-992 JGB (SHKx), 2020 WL 8575140, at *7 (C.D. Cal. Dec. 16, 2020) (same).
22  Thus, even if Plaintiff's claims for damages and injunctive relief are based on "the same alleged
23  conduct" (Mot. at 13), they seek completely different remedies, as Plaintiff clearly lacks an adequate
24  remedy at law for future harm.

25         As to Plaintiff's equitable claims for restitution, Defendant's argument is premature and
26  ignores the Federal Rules. Plaintiff has the right to plead claims such as restitution in the alternative,
27  so the availability of monetary damages does not preclude a claim for equitable relief. This is to
28  preclude prejudice to Plaintiff in the event that these proceedings later reveal that her legal remedies

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

are inadequate. *See Warren v. Whole Foods Mkt. California, Inc.,* No. 21-CV-04577-EMC, 2022 WL 2644103, at \*9 (N.D. Cal. July 8, 2022) ("Notably, the Federal Rules of Civil Procedure allow for pleading in the alternative. Specifically, Rule 8 states that a claim for relief must contain 'a demand for relief sought, *which may include relief in the alternative or different types of relief*.' Fed. R. Civ. P. 8(a)(3).") (emphasis in original); *Luong v. Subaru of Am., Inc.*, No. 17-CV-03160-YGR, 2018 WL 2047646, at \*7 (N.D. Cal. May 2, 2018) ("The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct."); *Estakhrian v. Obenstine*, 233 F. Supp. 3d 824, 846 (C.D. Cal. 2017) ("plaintiffs may seek injunctive and/or restitutionary equitable relief separate and apart from the same underlying claims").

In opposition to this well-established principle, Defendant cites to *Rhynes v. Stryker Corp.*, No. 10-cv-5619 SC, 2011 WL 2149095, at \*4 (N.D. Cal. May 31, 2011). Mot. at 13. However, in *Rhynes*, a product liability case, the court was clear that the "Plaintiffs provide no authority supporting their position" that they lack an adequate remedy at law. *Rhynes*, 2011 WL 2149095, at \*3. Conversely, Plaintiff has cited authorities supporting her position. *See supra*, *citing Luong* 2018 WL 2047646, at \*7; *Estakhrian*, 233 F. Supp. 3d at 846. Other courts are in accord. *See e.g., Adams v. Cole Haan, LLC*, No. 8:20-CV-00913-JWH-DFMx, 2021 WL 4907248, at \*4 (C.D. Cal. Mar. 1, 2021) (holding that *Sonner* does not supersede the Federal Rules' permission to plead in the alternative, and declining to dismiss equitable restitution claims brought under California consumer protection statutes as duplicative of plaintiff's claims seeking damages at law); *Edleson v. Travel Insured Int'll, Inc., No. 21-CV-323-WQH-AGS*, 2021 WL 4334075, at \*6 (S.D. Cal. Sept. 23, 2021) ("[N]o controlling authority[, including *Sonner*,] prevents a plaintiff from asserting alternative legal remedies at the pleading stage [...] In addition, discovery may reveal that claims providing legal remedies are inadequate.").

Thus, Plaintiff should be permitted to plead her claims for restitution in the alternative under the Federal Rules. For these reasons, Plaintiff has adequately alleged her claims for equitable relief.

**D.     <u>Plaintiff Adequately Pleads Her Claims Under the CLRA, UCL, and FAL</u>**

1.     <u>The Reasonable Consumer Standard Applies to Plaintiff's Claims</u>

As Defendant recognizes, Plaintiff's CLRA, UCL, and FAL claims are governed by the

reasonable consumer standard. *Williams*, 552 F.3d at 938. Under that standard, *at trial*, plaintiffs must only show that consumers are *likely to be deceived* by the challenged representation. *Id*. A reasonable consumer is "neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated but instead is the ordinary consumer within the target population." *Ehret v. Uber Techs., Inc*., 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014) (internal quotation marks omitted).

At this juncture, dismissal is appropriate in "rare situations", and only if, "[v]iewing the facts in the light most favorable to plaintiff," it is "'***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1129 (C.D. Cal. 2010) (quoting *Williams*, 552 F.3d at 939) (emphasis added).  For these reasons, "California courts [] have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938.

### 2. Plaintiff Alleges Plausible Deception Under The Reasonable Consumer Standard

This is not a "rare situation[]" in which granting a motion to dismiss is appropriate in a consumer deception case. *Prescott v. Reckitt Benckiser LLC*, No. 20-CV-02101-BLF, 2020 WL 7075624, at *4 (N.D. Cal. Dec. 3, 2020) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)). Here, the Products' front labels communicate a specific message to consumers, promising a specific number of grams of protein. *See* Section II, *supra*. For example, the SlimFast Advanced Nutrition Smoothie Mix, the Product purchased by Plaintiff, prominently states "20g HIGH PROTEIN" on the front label. Plaintiff understood this plain, unambiguous representation in a straightforward manner: the shake mix <u>itself</u> provides 20 grams of protein per serving. However, the Products provide significantly less protein than promised – a fact that Defendant does not and cannot dispute. Plaintiff was not the only consumer deceived by the Products' labeling. Indeed, Defendant's other customers who discovered Defendant's deceptive advertising schemes have voiced their frustration and disappointment in a number of consumer complaints (*see* consumer complaints, compiled at ¶ 22 in the CAC). Based on these allegations, it certainly is not "***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived" by the Protein Representations. *Yumul,* 733 F. Supp. 2d at 1129.

Plaintiff and other customers' understanding and interpretation of the Products' labels is even more reasonable given that "other smoothie and shake mix manufacturers correctly advertise on their products' front labels the amount of protein that consumers will receive based on the products alone, irrespective of whether the consumer adds milk or any other ingredient." CAC ¶ 23. For example, Nestle's Garden of Life Fit High Protein For Weight, which is a "*high protein*" *meal replacement **just like SlimFast***, advertises "28g Protein," and actually provides consumers with 28 grams of protein *from the shake mix alone*. *Id.* at ¶ 24; *see also id.* ¶ 25 (same for Nature's Bounty Complete Protein & Vitamin Shake Mix).

Recognizing that consumers understand product labeling in such a manner, the FDA has enacted regulations which **expressly prohibit** Defendant's precise conduct. *Brown* is on all-fours in this regard, detailing these regulations and how consumers are plausibly misled by even *less egregious* protein representations on the front labeling of food products. *See Brown*, 2022 WL 717816, at *7. In *Brown*, the defendant labeled its Nature's Path Hemp Hearts Granola as containing "10g PROTEIN," and below this protein representation, a disclaimer which "states that the protein content claim is 'per serving with milk' and below that, in even smaller font, states 'prepared with a 1/2 cup of skim milk.'" *Id.* at *2.   The plaintiff alleged that, based on this protein representation, "the Products fail to prominently display 'the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation' on the front the label, as required by 21 C.F.R. § 101.9(h)(4)." *Id.*

As previously discussed in Section V.A., *supra*, 21 C.F.R. § 101.9(h)(4) establishes that "the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation shall be ***specified prominently on the label***." (emphasis added).[5] The *Brown* court rejected the defendant's argument that the front label statement, which *disclosed that the protein serving was* "*per serving with milk,*" was sufficiently prominent so as to not mislead reasonable consumers. *Id.* at *7 ("how prominently the disclaimers are displayed is a question of fact."); *Id.* at * 2 ("The relevant regulation broadly provides that nutrient content claims,

---

[5] While Plaintiff is not pursuing a cause of action under 21 C.F.R. § 101.9(h)(4), the FDA's decision further supports Plaintiff's contention that the Products' Protein Representations are misleading to reasonable consumers.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1  such as front label protein statements, cannot 'implicitly characterize the level of the nutrient in the

2  food' and cannot be 'false or misleading in any respect.'") (quoting 21 C.F.R. § 101.13(i)(3)).

3      Here, the Products' front labeling makes **no reference to milk**, let alone any language which

4  discloses to consumers that they need to add ingredients to the Products to receive the grams of protein

5  plainly promised on the front label. *See* Section II, *supra*, (depicting label). For these reasons,

6  consumers reasonably understand the Protein Representations to mean what they say: that the

7  Products *themselves* contain the grams of protein per serving plainly represented on their front labels.

8      Defendant's arguments and authorities in its Motion are wholly unavailing. Notably,

9  Defendant does not point to a single authority that is factually congruous to this case (e.g., *Brown*,

10 *supra*). Rather, Defendant compares this case to *Ebner*, a slack-fill case concerning a deceptively

11 designed tube of lip balm, where "[n]one of the qualifying language is hidden or unreadably small."

12 Mot. at 15 (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016)). In contrast, the only

13 qualifying language on the Products here *is hidden*. The language which purportedly clarifies the

14 Protein Representations is buried within fine print on the side panel of the Products,[6] not their front.

15 And as this Court and the Ninth Circuit have repeatedly reiterated, "[w]here, as here, a plaintiff alleges

16 a defendant has falsely labeled a product [with a misrepresentation on the front label], the defendant

17 cannot rely on contrary information in the ingredient list." *Hall v. Diamond Foods, Inc*., No. C-14-

18 2148 MMC, 2014 WL 3779012, at *4 (N.D. Cal. July 31, 2014) (Chesney, J.) (citing *Williams*, 552

19 F.3d at 939) (holding reasonable consumers should not be "expected ... to discover the truth from the

20 ingredient list"; explaining, "[w]e do not think that the FDA requires an ingredient list so that

21 manufacturers can mislead consumers and then rely on the ingredient list to correct those

22 misinterpretations and provide a shield for liability for the deception.'"))

23      "Rather, as the Ninth Circuit has noted, 'reasonable consumers expect that the ingredient list

24 contains more detailed information about the product that confirms other representations on the

25 packaging.'" *Id.* (citing *Williams*, 552 F.3d at 939); *see also Walters v. Vitamin Shoppe Indus.*, 701

26 F. App'x 667, 670 (9th Cir. 2017) ("Applying the logic of *Williams* to this case, Walters did not have

---

6 As discussed in Section V.A., *supra*, the asterisks tied to the Protein Representations lead to the side
panel of the Products, not the Nutrition Facts tables on their back panel as Defendant contends in its
Motion. Mot. at Exs. 1-4.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

a duty to validate claims on the front of a product's label [*i.e.*, the milligrams of an active ingredient in a dietary supplement] by cross-checking them against information contained in small print on the back. His failure to read the clarifying serving-size information does not constitute a failure to reasonably safeguard his interests.") (emphasis added); *Cimoli*, 546 F. Supp. 3d at 903 (applying *Walters* in rejecting the defendant's argument that clarifying information on the back label of Vitamin C gummies was sufficient to cure the nutritional misrepresentations made on the products' front labels (*i.e.*, that the representation was based on a "three-gummy serving size")).

Neither does the tiny, difficult-to-see symbol next to the Protein Representations do anything to dispel consumer deception. First and foremost, having a symbol, without any further explanation, does not satisfy Defendant's obligation to "specif[y] ***prominently*** on the label" the "the type and quantity of the other ingredients to be added to the product by the user" to reach the promised amount of protein per serving. 21 C.F.R. § 101.9(h)(4). Indeed, in *Brown*, the defendant went as far as to disclose *on the front label*, *directly underneath alleged misrepresentation* that the grams of protein are "per serving with milk" and "prepared with a 1/2 cup of skim milk," yet that disclaimer was insufficient to dispel consumer confusion, at least at the pleading stage. *Brown*, 2022 WL 717816, at *2, 7.

It is well established under California law that symbols, such as asterisks, do not serve as a shield of liability for deceptive, front label representations. For example, in *Locklin*, the defendant sold a sunscreen product labeled as "REEF SAFE* SUNSCREEN", despite the fact that the product contained ingredients that are "widely thought to harm coral reefs." *Locklin v. StriVectin Operating Co., Inc.*, No. 21-CV-07967-VC, 2022 WL 867248, at *1 (N.D. Cal. Mar. 23, 2022). The court held that the "asterisk and the fine print do not immunize [the defendant] against liability," finding that defendant's reliance on "[t]his argument is absurd." *Id.* at *3. The court further noted that "a company can't say something misleading on the front of a label and escape liability by stating 'that's not actually what we mean' in fine print on the back." *Id.* Other courts in California, including in this District, are in accord. *Anthony v. Pharmavite*, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019) (holding that an "asterisk directing consumers to [a] disclaimer" does not cure a deceptive claim because "there is a question of fact whether a reasonable consumer would notice [the asterisk] and follow it to the disclaimer.");

*Madenlian v. Flax USA Inc.*, 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31, 2014) (holding that "the extent to which [an asterisk and] additional language clarifies the ambiguity of the [challenged] representation is a fact question not suitable for resolution" at the motion to dismiss stage); *Sperling v. Stein Mart, Inc.*, 2016 WL 11265686 (C.D. Cal. Mar. 15, 2016) ("it would be error for the Court to expect reasonable consumers to look beyond Defendant's" misleading representations to find a clarifying definition elsewhere, "even though Defendant included an asterisk immediately following the [misleading representation]" directing consumers to the clarifying definition).

Defendant should be well aware of this principle given that Judge Seibel of the Southern District of New York has recently casted doubt on Defendant's reliance on an asterisk to dispel consumer confusion in a matter concerning Defendant's SlimFast Products. Specifically, in *Maroney*, the court criticized the small size of an asterisk compared to a representation regarding weight loss, and stated it was "not immediately apparent that the consumer should follow the asterisk to read the disclaimer language on the right side of the label." *See* Declaration of Robert Abiri, ¶ 3, Ex. A (June 17, 2021 Transcript on the Hearing for Defendant's Motion to Dismiss in *Maroney v. KSF Acquisition Corporation*., No. 20-cv-2788-CS). For the reasons stated above, Defendant's reliance on its purported disclaimer falls short, and does not provide any shield of liability for the misconduct.

Still, Defendant attempts rely on its purported back-label disclosure and to distinguish this case from *Williams* by describing the Products as "cylindrical," and claiming that the Nutrition Facts panel satisfies *Ebner*'s requirement that the qualifying language not be "hidden or unreadably small" given that the Nutrition Facts is purportedly "massive and just inches away" from the Protein Representation. Mot. at 16. This is incorrect. As a preliminary matter, the asterisks that Defendant references to in its Motion do not lead consumers to the Nutrition Facts on the back panel of the Products. Instead, those asterisks lead to the barely legible and incomplete disclosures buried at the bottom the Products' side panels. *See* Section V.A., *supra*. Furthermore, as the Products' ***actual labeling*** demonstrates, the Nutrition Facts is not visible to consumers viewing the Products' front labeling. *See* Section II; *see also* CAC ¶ 16. While Defendant has attempted to introduce flat, corporate blueprints of the Products' labeling, *see* Mot. at Exs. 1-4, these labels do not capture how consumers view them in the grocery store. Instead, they are depicted as ***flat sheets of paper***. *Id.* This

Court has denied requests for judicial notices of similar product packaging blueprints in other consumer class actions, noting that flat corporate blueprints are not what consumers see while shopping. *Hall v. Diamond Foods, Inc.*, No. C-14-2148 MMC, 2014 WL 5364122, at *3 (N.D. Cal. Oct. 21, 2014) (Chesney, J.) ("[E]ven assuming defendant's request for judicial notice were granted, the text on the packaging is presented by defendant in a manner in which a consumer would not view it, namely, as a flat one-sided sheet of paper, as opposed to the manner in which it ordinarily would be viewed while on a store shelf containing potato chips."); *see also Brown v. Hain Celestial Group, Inc.*, 913 F.Supp.2d 881, 893 (N.D. Cal. 2012) (declining to take judicial notice of "proof"; agreeing with the party opposing judicial notice that such exhibit, which "portray[ed] the principal display panel, the information panel and the ingredients list side-by-side," constituted "a distortion of the way in which consumers actually see the [p]roducts' labeling"). This is especially true where, as here, "the text on which defendant relies is, in each instance, set forth in font smaller than the challenged statement and not located near the center of the front of the packaging, where the challenged statement is placed." *Id.* (citing *Williams*, 552 F.3d at 939); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1120 (S.D. Cal. 2021) ("Plaintiffs' objections to the high-resolution proof specifications have some merit. These two-dimensional, flattened proofs distort what consumers see when viewing the three-dimensional products and do not represent how the products are advertised in their final product.").

For these reasons, Plaintiff has sufficiently demonstrated that the Products' labeling is plausibly deceptive, and that consumer deception in this case is not *impossible*. For example, while *Brown* is directly on-point, and Plaintiff has set forth numerous facts and legal authority in support of her allegations (*e.g.*, consumer complaints, FDA regulations, other competitor products), Defendant has proffered *no authorities* involving a similar factual scenario to this case which would demonstrate that consumers cannot be plausibly deceived. Defendant provides no convincing factual support for its interpretation of the Products' labeling either. Rather, Defendant points to corporate, flat renderings of the labels which consumers would not see in the grocery store and are not required to consult based on decade old controlling authority from the Ninth Circuit. This alone is insufficient, and Defendant's Motion should be denied.

At the very least, the Court should decline to make a judicial determination at the pleading stage that consumers, as a matter of law, would not plausibly read the Products' Protein Representation as Plaintiff did. Plaintiff's allegations, similar complaints by other consumers, the marketing of competitor products, the decision in *Brown*, and the FDA regulations cited herein all support Plaintiff's contention that, *at this stage*, Plaintiff's claims are plausible. Indeed, as this Court has recognized, "[w]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Johnson v. Triple Leaf Tea Inc.*, No. C-14-1570 MMC, 2014 WL 4744558, at *4 (N.D. Cal. Sept. 23, 2014) (J. Chesney) (citing *Williams*, 552 F.3d at 938); *Prescott*, 2020 WL 7075624, at *5 (holding that the court will "decline[] to make the factual determination urged by" Defendant as to how consumers understand or interact with products' labeling, particularly in light of the Ninth Circuit's guidance in *Williams*). Defendant's authorities recognize the same. *See e.g., Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226–27 (2013) ("The question whether consumers are likely to be deceived is a question of fact that can be decided on a demurrer only if the facts alleged in the complaint, and facts judicially noticed, compel the conclusion as a matter of law that consumers are not likely to be deceived.").

Finally, even if the Court finds that Defendant's reading of its own labels is one plausible interpretation that consumers may understand from the Products' labels, the Court should still refuse to grant Defendant's Motion because Plaintiff has alleged a more plausible (or at the very least, just as plausible) reading of the labels. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (when "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible.") For these reasons, Plaintiff has adequately pled her claims for Defendant's violation of the CLRA, and as further established below, violations of the FAL, common law fraud, and UCL fraud.

3.   Plaintiff Adequately Pleads Violations of the UCL and FAL

As Defendant recognizes, Plaintiff's "FAL and UCL claims are governed by the same standards as the CLRA claim." Mot. at 17. For this reason, Plaintiff has adequately pled violations of the UCL and FAL.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

### E.        **Plaintiff Adequately Alleges Her Breach of Implied Warranty Claim**

Defendant argues that Plaintiff's breach of implied warranty claim fails as a matter of law because there is no vertical privity between Plaintiff and Defendant, and that no exceptions apply to Plaintiff's claim. Mot. at 18. Not so. Plaintiff's claim falls squarely within three exceptions to the privity requirement. *First*, Plaintiff need not allege privity to sustain her implied warranty claim because it falls within the foodstuff exception. *See Ashton*, 2020 WL 8575140, at *12 ("[B]ecause the Products are foodstuffs meant for human consumption, Plaintiffs are further exempt from the privity requirement.") (citing *Cabrera v. Bayer Healthcare, LLC*, No. LACV1708525JAKJPRX, 2019 WL 1146828, at *1 (C.D. Cal. Mar. 6, 2019) ("Privity is not required when the claim relates to food or other substances intended for consumption by consumers."); *see also Mexicali Rose v. Super. Ct.*, 1 Cal. 4th 617, 621 (1992) ("foodstuffs do not fall within the general rule of privity between the manufacturer and the consumer, even though the purchase is made through a retailer"); *Benavides v. Kellogg Co.*, No. CV 10-2294-JST, 2011 WL 13269720, at *7 (C.D. Cal. Mar. 21, 2011) (declining to adopt a "narrow view" of the foodstuffs exception requiring physical injury).

Second, there is another exception for "when the plaintiff relies on written labels or advertisements of a manufacturer." *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Despite this, Defendant argues that this exception only applies to express warranty claims. Mot. at 18 (citing *Angiano v. Anheuser-Busch Inbev Worldwide, Inc.*, 532 F.Supp.3d 911, 920 (C.D. Cal. 2021)). But this goes directly against Ninth Circuit precedent. As this Court recognized in *Triple Leaf*, "[a]s the Ninth Circuit has explained. . . although the general rule is that a plaintiff alleging breach of an implied warranty 'must stand in vertical privity with the defendant,' an exception exists 'when the plaintiff relies on written labels or advertisements of a manufacturer.'" *Triple Leaf*, 2014 WL 4744558, at *5.

Finally, there is a third exception to the privity requirement because Plaintiff is an intended third-party beneficiary of the contract between Defendant and Safeway, the retailer from which she purchased the Product. CAC ¶ 11. *See Ashton*, 2020 WL 8575140, at *12 (collecting cases).

Defendant also contends that Plaintiff's implied warranty claim fails because Plaintiff does not allege "that any of the challenged products are unfit for human consumption or do not possess

even the most basic degree of fitness for human consumption." Mot. at 19. In other words, Defendant contends that Plaintiff has failed to allege a claim under Cal. Comm. Code § 2314(2)(c). *See id*. ("Are fit for the ordinary purposes for which such goods are used.") However, to state a claim for breach of implied warranty of merchantability, plaintiffs may allege that a product is not fit for its ordinary purpose **or**, ***alternatively***, under Cal. Com. Code § 2314(2)(f), that it "do[es] not conform to the promises or affirmations contained on the container or label." *Morris v. Mott's LLP*, 2019 WL 948750, at *6 (C.D. Cal. 2019) (citation omitted); *Traction v. Viva Labs, Inc.*, 2017 WL 4125053, at *8 (S.D. Cal. Sept. 18, 2017) ("[M]erchantability" includes "a product that conforms to the promises or affirmations of fact made on the container or label."). Here, Plaintiff has clearly alleged that the Products do not conform to the promises or affirmations of fact on the front label of the Products regarding the amount of protein per serving. CAC ¶¶ 79-81 ("The Products, however, have not 'conformed to the promises…made on the container or label' because the Products contain far fewer grams of protein as promised on the Products' front label. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.").

Thus, Plaintiff has adequately alleged that Defendant violated its implied warranty of merchantability under Cal. Com. Code § 2314(2)(f). *See White v. Kroger Co.*, No. 21-CV-08004-RS, 2022 WL 888657, at *3 (N.D. Cal. Mar. 25, 2022) (rejecting defendant's argument that plaintiff failed to adequately plead implied warranty claim because the plaintiff "fails to explain how the challenged sunscreen products do 'not possess even the most basic degree of fitness for ordinary use,'" explaining that "however, the implied warranty of merchantability includes encompasses a promise that the goods '[c]onform to the promises or affirmations of fact made on the container or label' and not just that they lack a 'basic degree of fitness for ordinary use.'") (internal quotation marks and citations omitted). For these reasons, Defendant's argument, and the cases it relies on, simply do not apply to Plaintiff's implied warranty claim.

Finally, Defendant argues that Plaintiff's implied warranty claim fails because "'there cannot be an implied warranty claim that is contrary to what the label actually says.'" Mot. at 19 (citing *Angiano v. Anheuser-Busch Inbev Worldwide, Inc.*, 532 F.Supp.3d 911, 920 (C.D. Cal. 2021)). In support of this argument, Defendant also states that it is undisputed that "the label states that 20g of

protein refers to the amount per serving as prepared with 8 oz. of milk, and that one scoop of the powder contains 12g protein." *Id*. However, Defendant is adding words to the front label Protein Representations in dispute. The Protein Representations ***do not*** state that the amount of protein refers to the amount per serving as prepared with 8 oz. of milk. Further, *Angiano* is inapposite because in that case, the disclaimer was ***underneath*** the challenged representation. *See Angiano*, 532 F.Supp.3d at 920 ("The Beck's beer label that Plaintiffs looked at includes the statement 'contains less than 0.5 percent (or .5%) alcohol by volume' immediately underneath the 'non-alcohol' statement."). That is not the case here, where Defendant's purported disclaimer is on the side panel of the Products. Thus, Plaintiff has adequately alleged her implied warranty claim because it is not contrary to the front label Protein Representations.

### F.  Plaintiff Has Adequately Alleged Her Express Warranty Claim

As to Plaintiff's express warranty claim, Defendant again attempts to add words to the representations in dispute. Although this case challenges the Products' front label Protein Representations, Defendant states that "the labeling repeatedly and expressly states that the product provides 20 grams of protein per serving as prepared with eight ounces of milk." Mot. at 20. Again, the Protein Representations do not state "as prepared with eight ounces of milk." They simply state the amount of protein per serving (*e.g.*, "20g High Protein"). CAC ¶¶ 16-19. Still, Defendant contends that the Court should consider the information on the side and back panels of the Products. In support, it relies on *Minkler v. Apple, Inc.*, 65 F.Supp.3d 810, 817 (N.D. Cal. 2014). But *Minkler* is inapposite for this precise reason. In *Minkler*, the full disclosure was solely confined to the "Hardware Warranty": the same place the plaintiff alleged the express warranty was breached. *Id*. at 814. These facts clearly do not apply here. Rather, Plaintiff's breach of express warranty claim is premised on the Products' *front label* Protein Representations, whereas the purported clarifying information that Defendant relies on is found on the Products' *back* labels.

Thus, Defendant is attempting to circumvent the Ninth Circuit's decision in *Williams* by having the Court read the Products' front label representations and back-label representations as one complete statement. But consumers are not expected to look at the side or back of the Products, and whether the front label Protein Representations are somehow cured by the "as prepared with milk"

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1    disclaimers found on the side or back panels of the Products is a question of fact which is not

2    appropriate for resolution at this stage. *See Williams*, 552 F.3d at 938 ("While there are disclaimers

3    and qualifying language, determining whether a reasonable consumer would be deceived is

4    inappropriate at [the motion to dismiss] stage of the litigation."); *see also Scilex Pharm. Inc. v. Sanofi-*

5    *Aventis U.S. LLC*, 552 F. Supp. 3d 901, 920-21 (N.D. Cal. 2021) (finding that the presence of a

6    disclaimer and asterisk qualifying the "Maximum Strength" claim of a pain relief patch "do[] not

7    require dismissal of the fraudulent advertising claims [on a motion to dismiss.]").

8         Rather, because Plaintiff adequately pleaded her consumer protection claims (as set forth

9    above), Plaintiff has also properly pleaded her express warranty claims as well. *Hadley v. Kellogg*

10   *Sales Co.*, 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017) ("[C]ourts in this district regularly hold that

11   stating a claim under California consumer protection statutes is sufficient to state a claim for express

12   warranty.") (citing *Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST, 2015 WL 6694104, at

13   *7 (N.D. Cal. Nov. 3, 2015) (finding that because plaintiffs satisfied the reasonable

14   consumer standard with respect to their California consumer protection claims, the same "allegations

15   [we]re sufficient to state a claim for breach of express warranty")). Thus, Plaintiff has adequately

16   alleged her claim for breach of express warranty.

17       **G.**   **Plaintiff Adequately Pleaded Her Claim for Unjust Enrichment**

18        Defendant makes the cursory argument that Plaintiff cannot maintain her claim for unjust

19   enrichment because the claim "is based on the same" theory as her consumer protection claims, and

20   because "California does not recognize a separate cause of action for unjust enrichment." Mot. at 21.

21   For the reasons stated throughout this Opposition and Plaintiff's Complaint, Defendant's first

22   argument is incorrect. Defendant promises that the Products provide a specific number of grams of

23   protein per serving of the Products but does not provide consumers with the promised amount of

24   protein. *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) ("[T]he elements for a claim of

25   unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of

26   another.").

27        As to Defendant's contention that Plaintiff's unjust enrichment claim must be dismissed

28   because it is purportedly duplicative, this Court has recognized that a plaintiff is permitted to pursue

22

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

1  an unjust enrichment claim under a quasi-contract theory, which is precisely the theory alleged in the

2  Complaint. CAC ¶¶ 83-88; *see Hall*, 2014 WL 3779012, at *5 (rejecting defendant's motion to

3  dismiss plaintiff's claim based on quasi-contract/unjust enrichment, holding that although "unjust

4  enrichment itself is not a cause of action, the term is synonymous with restitution, and common law

5  principles of restitution require a party to return a benefit when the retention of such benefit would

6  unjustly enrich the recipient") (cleaned up).

7        **H.**    **Plaintiff's Common Law Fraud Claim Should Survive**

8        Defendant also contends that Plaintiff's common law fraud claim fails for the same reasons

9  as her CLRA, UCL and FAL claims. Mot. at 21-22. However, as demonstrated above, Plaintiff has

10  plausibly alleged that the Protein Representations are misleading under California's consumer

11  protection statutes. For the same reason, Plaintiff's common law fraud claim, which is predicated on

12  the same misleading and fraudulent conduct, survives as well.

13        Defendant's sole independent basis to seek dismissal of the common law fraud claim is a

14  purported failure to allege scienter. However, Plaintiff has adequately alleged scienter. While "a party

15  must state with particularity the circumstances constituting fraud or mistake[,] [m]alice, intent,

16  knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b);

17  *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009) ("Rule 9(b)'s

18  heightened pleading requirements do not apply to allegations regarding an accused's state of mind—

19  thus, knowledge need only be alleged *generally* to state a valid claim for fraud."). This is because,

20  without the benefit of discovery, a plaintiff cannot realistically be expected to plead a defendant's

21  actual state of mind. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). Thus, as Defendant

22  admits, *Twombly* and *Iqbal's* pleading standards under Fed. R. Civ. P. 8 apply. Mot. at 22.

23        Here, Plaintiff has sufficiently alleged intent or knowledge on Defendant's account. Plaintiff

24  alleges that as the entity responsible for the manufacturing, ingredients, labeling, marketing, and sale

25  of the Products, it is clearly plausible that Defendant was aware that reasonable consumers would

26  believe the Products contain the number of grams of protein per serving as promised on the Products'

27  front label. CAC ¶¶ 29-30; *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10- 4387 PJH, 2011 WL

28  2111796, at *12 (N.D. Cal. May 26, 2011) (sustaining fraud claim based on allegation that

"defendants 'knew or recklessly disregarded' the fact that their ice cream was not 'all natural,' and that they knew that the products were misleadingly labeled."); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484(JS) (AKT), 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (inferring intent to defraud based on defendant's knowledge that representation was misleading). Indeed, Defendant was or should have been aware of this deceptive conduct by way of the numerous complaints by individuals on the SlimFast Store on Amazon.com and the fact that competitor products are labeled in a truthful manner. CAC ¶¶ 22-26.

Moreover, allegations of profit motive are sufficient to meet the scienter pleading standard. *Swingless Golf Club Corp.*, 679 F. Supp. 2d at 1067 (finding allegations of profit motive sufficient under the less stringent scienter pleading requirement of Rule 9(b)); *Arroyo v. TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752, at *9 (N.D. Cal. Sept. 29, 2015) (sustaining fraud claim when plaintiff alleged that defendant "intended to induce reliance on the representations to boost sales"). Here, Plaintiff has alleged that by using misleading representations about the amount of protein in the Products, Defendant has "increase[ed] market demand for the Products and increased its market share relative to what its demand and share would have been had it marketed the Products truthfully." CAC ¶ 32. This is not a surprising fact, given that the amount of protein contained in the Products is a material factor in the purchasing decisions of Plaintiff, and other reasonable consumers, given that the Products serve as nutritional shakes and meal replacements where protein is an essential nutrient for the human body. CAC ¶ 27. As such, Defendant undoubtedly benefits financially by highlighting and overrepresenting the amount of protein contained in the Products but delivering less protein per serving than what was otherwise promised. Absent discovery on Defendant's actual state of mind, these allegations are sufficient to satisfy the low pleading bar for scienter under Rule 9(b).

## I.   The CLRA Pre-Suit Notice Requirement Is Satisfied

Finally, Defendant argues that Plaintiff's CLRA claim should be dismissed because the CLRA pre-suit notice requirement was not satisfied. Defendant *admits* that it received notice of its CLRA violations and includes the letter evidencing this fact, dated back from January 25, 2022. Mot. at 23 (citing Declaration of William P. Cole, Ex. 1). Indeed, the letter clearly demonstrates that notice of Defendant's violations of the CLRA was sent *on a class wide basis*. *Id.* at 1 (noting that plaintiff's

24

counsel "write on behalf of our Client, **as well as on behalf of all others similarly situated**…") (emphasis added). Defendant's only issue is that Defendant was initially informed of its violations of the statute by a different purchaser of the Products before Plaintiff.

However, as numerous courts have recognized, the CLRA pre-suit notice requirement requires only that **a consumer** inform Defendant of its violations and requested relief under the CLRA. It does not have to be the same consumer who brought the lawsuit under the CLRA. *See e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1174-75 (C.D. Cal. 2010) (rejecting Defendant's argument that CLRA pre-suit notice requirement was not met when "CLRA notices were sent on behalf of Plaintiffs who are not named as class representatives," holding that one or more named plaintiffs may satisfy the notice requirements of § 1782 on behalf of the entire putative class); *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1317 (C.D. Cal. 2013) ("When a named plaintiff provides written notice to a defendant not only on his own behalf but on behalf of similarly situated consumers, the named plaintiff's notice suffices to satisfy § 1782 for all class members."); *Vizcara v. Unilever United States, Inc.*, No. 4:20-cv-02777, 2020 WL 4016810, at *3 (N.D. Cal. July 16, 2020) (same, holding that the CLRA pre-suit notice requirement is satisfied when any consumers, even one that is not the named plaintiff in the instant suit, sends notice to defendant of its alleged conduct on a class-wide basis). Because Defendant received notice of its violations of the CLRA on a class-wide basis in January 2022, the CLRA pre-suit notice requirement has been satisfied.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motion in its entirety.


Dated: September 23, 2022



**CUSTODIO & DUBEY, LLP**


By: */s/   Robert Abiri*
Robert Abiri

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899
E-mail: abiri@cd-lawyers.com


**TREEHOUSE LAW, LLP**
Joshua Nassir (SBN 318344)
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
10250 Constellation Blvd., Suite 100
Los Angeles, CA 90067
Telephone: (310) 751-5948
jnassir@treehouselaw.com
bheikali@treehouselaw.com
rglezakos@treehouselaw.com

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT