IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA NACARINO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KSF ACQUISITION CORPORATION,<br><br>Defendant. | Case No. 22-cv-04021-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Before the Court is defendant KSF Acquisition Corporation's ("KSF") "Motion to Dismiss Plaintiff's Complaint," filed September 9, 2022. Plaintiff Elena Nacarino ("Nacarino") has filed opposition, to which KSF has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND[2]

KSF, a Delaware corporation, owns SlimFast, "one of the leading dietary shake and smoothie mix brands in the United States." (See CAC ¶¶ 2, 13, 14.) Nacarino, a California resident, alleges that "in or around December 2021," she purchased a product marketed by KSF, specifically, "SlimFast Advanced Nutrition Smoothie Mix Vanilla Cream Product" ("the Product"), from a Safeway store in San Francisco, and that she did so in reliance on an assertedly false and misleading statement on its packaging. (See CAC ¶¶ 6, 11, 33.)

---

[1] By order filed October 17, 2022, the Court took the matter under submission.

[2] The following facts are taken from the allegations of the operative complaint, the "Class Action Complaint" ("CAC").

Specifically, Nacarino alleges that in purchasing the Product, she saw and relied on the phrase "20g HIGH PROTEIN" (the "Protein Representation") on its front label (see CAC ¶ 16), which she understood to mean that "the smoothie mix itself contained 20 grams of protein per serving" (see CAC at ¶ 11), whereas, in fact, the "[m]ix itself . . . contains only 12g of protein per serving" (see CAC at ¶ 17).

Nacarino alleges other SlimFast products (hereinafter, together with the Product, "the Products") "suffer from the same flaw." (See CAC ¶ 18.) In particular, Nacarino alleges, SlimFast Original Meal Replacement Shake Mix promises "'10g PROTEIN,' but the mix only contains 2g of protein per serving" (see CAC ¶ 18), SlimFast Advanced Immunity Smoothie Mix promises "'20g PROTEIN,' but only provides 12g of protein per serving" (see CAC ¶ 19), and SlimFast Diabetic Weight Loss Meal Shake promises 10g of protein but provides only 2g of protein per serving (see CAC ¶¶ 1, 19).

Based on said allegations, Nacarino, on her own behalf and on behalf of two putative classes, asserts the following seven claims for relief: (1) "Violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq." ("CLRA");[3] (2) "Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq." ("FAL"); (3) "Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, et seq." ("UCL"); (4) "Breach of Express Warranty, Cal. Com. Code § 2313"; (5) "Breach of Implied Warranty, Cal. Com. Code § 2313";[4] (6) "Quasi Contract/Unjust Enrichment/Restitution"; and (7) "Common Law Fraud."[5]

---

[3] The CLRA claim is asserted on behalf of a "California Consumer Subclass" comprised of "[a]ll residents of California who purchased the Product for personal, family, or household purposes, within the applicable statute of limitations period." (See CAC ¶ 34.)

[4] The FAL, UCL, Breach of Express Warranty, and Breach of Implied Warranty claims are asserted on behalf of a "California Class" comprised of "[a]ll residents of California who purchased the Products within the applicable statute of limitation[s]." (See CAC ¶ 34.)

[5] The Quasi Contract/Unjust Enrichment/Restitution and Common Law Fraud claims are asserted on behalf of both the California Consumer Subclass and the California Class. (See CAC ¶ 34.)

**DISCUSSION**

By the instant motion, KSF seeks an order dismissing the above-titled action, on the grounds that Nacarino (1) lacks standing to assert several of the claims in her complaint and (2) has failed to allege facts sufficient to support any of her claims for relief. The Court first turns to the question of standing.

**A. Standing**

A district court has subject matter jurisdiction only where the plaintiff has "[s]tanding to sue" under Article III of the Constitution. See Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To satisfy Article III's standing requirements, (1) "the plaintiff must have suffered an injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury must be "fairly traceable" to the challenged conduct of the defendant, and (3) "it must be likely ... that the injury will be redressed by a favorable decision." See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation, citation, and alteration omitted). "The party invoking federal jurisdiction bears the burden of establishing" the elements of standing, see id. at 561, and must make such a showing separately for each form of relief requested, see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 185 (2000).

Here, KSF challenges, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Nacarino's "standing to pursue injunctive relief" (see Mot. at 8:9) and "standing to bring claims as to products she did not purchase" (see Mot. at 9:22-23).

**1. Standing to Seek Injunctive Relief**

To have standing to seek injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation and citation omitted). The "threatened injury must be certainly impending to constitute [Article III] injury in fact" and "allegations of possible future injury are not sufficient." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis in original) (internal quotation and citation omitted).

Here, KSF argues Nacarino lacks standing to pursue injunctive relief under the

CLRA, FAL, or UCL, because Nacarino is "now aware 'that consumers must add milk to obtain the grams of protein' referenced on the front labels," (see Mot. at 9:4-5 (quoting CAC ¶¶ 5-6)), and thus "does not face any threat of actual or imminent injury," (see Mot. at 9:11-12).

A "previously deceived consumer" who "now knows or suspects that the [defendant's] advertising was false at the time of the original purchase" may establish the risk of future harm by plausibly alleging that: (1) "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to"; or (2) "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." See Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 969-70 (9th Cir. 2018). "[W]here a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward," however, injunctive relief "would serve no meaningful purpose as to that plaintiff." Jackson v. Gen. Mills, Inc., No. 18CV2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

In the instant case, as KSF points out, the true meaning of the Protein Representation on the Product can be ascertained from (1) the instruction panel of the container, which states "[p]er smoothie as prepared with fat-free milk" and/or (2) the Nutrition Facts panel on the back of the container, which contains two columns by which the nutrition value of one serving/scoop of the mix on its own and one serving/scoop of the mix as prepared "w/ 8 fl oz Fat Free Milk" are distinguished. (See Reyna Decl. Ex. 1); see also Ass'n of Am. Med. Colleges v. United States, 217 F.3d 770, 778 (9th Cir. 2000) (holding, for purposes of considering motion to dismiss on grounds of subject matter jurisdiction, court may consider matters outside pleadings). Consequently, if Nacarino, as KSF also points out, "ever actually considers purchasing the Advanced Nutrition Product again, she can just instantly check the Nutrition Facts panel for the protein amounts per scoop and as prepared, which she has not alleged are inaccurate in any

way." (See Mot. at 9:8-11.)

Under such circumstances, Nacarino, "going forward," is able to "evaluate product claims and make appropriate purchasing decisions" as to the Product, and, consequently, injunctive relief "would serve no meaningful purpose." See Jackson, 2020 WL 5106652, at *5 (holding plaintiff allegedly deceived by cereal box slack-fill lacked standing to seek injunctive relief "given that she now kn[ew] she [could] ascertain the amount of cereal she is buying by looking at the label"); see also, e.g., Fernandez v. Atkins Nutritionals, Inc., No. 317CV01628GPCWVG, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (holding plaintiff allegedly deceived by "net carbs" representation on product packaging lacked standing to seek injunctive relief; noting plaintiff "now kn[ew] how [defendant] goes about calculating its net carbs claims, and she [would] not be misled next time").

Accordingly, to the extent her claims are based on the Product she purchased, the Court finds Nacarino lacks standing to seek injunctive relief under the CLRA, FAL, or UCL.[6]

### 2. Standing to Seek Any Relief as to Products Not Purchased by Named Plaintiff

As set forth above, Article III standing requires a showing of an injury in fact that is traceable to the challenged conduct and redressable by a favorable ruling. See Lujan, 504 U.S. at 560-61. Under the FAL and UCL, an individual has standing only if he or she has "suffered injury in fact and lost money or property as a result of" a violation of such statute. See Cal. Bus. & Prof. Code §§ 17204, 17535; see also Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 322 (2011). Similarly, under the CLRA, "[a] plaintiff . . . must not only be exposed to an unlawful practice but also have suffered some kind of damage." See Cal. Civ. Code. § 1780; see also Bower v. AT&T Mobility, LLC, 196 Cal.App.4th 1545, 1556 (2011) (internal quotation and citation omitted).

KSF argues Nacarino lacks standing, under Article III as well as under the CLRA,

---

[6] Given this finding, the Court does not address, in connection with Nacarino's claims for injunctive relief, KSF's additional argument that those claims fail in light of an adequate legal remedy.

FAL, and UCL, to assert any claims based on products she did not purchase, namely, SlimFast Original Meal Replacement Shake Mix, SlimFast Diabetic Weight Loss Meal Shake, and SlimFast Advanced Immunity Smoothie Mix. (See Mot. at 9:24-10:2.) Contrary to KSF's argument, however, "the prevailing view within this district (and elsewhere in the Ninth Circuit) . . . holds that a plaintiff [in a putative class action] may . . . have constitutional and statutory standing to assert claims based on misrepresentations appearing on products he did not purchase" where "the products and claims at issue are substantially similar." See Werdebaugh v. Blue Diamond Growers, No. 12-CV-02724-LHK, 2013 WL 5487236, at *13 (N.D. Cal. Oct. 2, 2013) (internal quotation and citation omitted); see also Brazil v. Dole Food Co., No. 12-CV-1831-LHK, 2013 WL 5312418, at *7 (N.D. Cal. Sep. 23, 2013) (noting the "entire point of the substantially similar approach" is to ensure, "by limiting a plaintiff's ability to sue over products he did not purchase to situations involving claims and products that are substantially similar to those products he did purchase," that "the plaintiff is seeking to represent only those individuals who have suffered essentially the same injury as the plaintiff.").

Here, the injury Nacarino alleges she suffers is essentially the same as the injury she alleges is suffered by putative class members who purchased other SlimFast smoothie/shake mix products. Specifically, all of Nacarino's claims are based on the "same kind of food products," see Astiana v. Dreyer's Grand Ice Cream, Inc., No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012), namely, smoothies and shake mixes, and the "same labels for all of the products," see id., namely, Protein Representations on the Products' front labels (see also CAC ¶¶ 1, 3).

Accordingly, to the extent she asserts claims, other than for injunctive relief, based on products she herself did not purchase, the Court finds Nacarino has adequately demonstrated Article III and statutory standing.

B. Failure to State a Claim

KSF contends each of the causes of action alleged here, is subject to dismissal, pursuant to Rule 12(b)(6), for failure to state a claim.

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss," however, "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

The Court addresses Nacarino's claims in the sequence alleged.

**1. First, Second, and Third Claims for Relief ("California Consumer Fraud Claims")**

Nacarino's First, Second, and Third Claims for Relief allege violations of the CLRA, FAL, and UCL, respectively.

The CLRA defines various "unfair methods of competition and unfair or deceptive acts or practices," such as "[r]epresenting that goods ... have ... characteristics [or] ... benefits ... that they do not have[,]" see Cal. Civ. Code § 1770(a)(5), "[r]epresenting that

7

goods ... are of a particular standard, quality, or grade ... if they are of another," see Cal. Civ. Code § 1770(a)(7), and "[a]dvertising goods or services with intent not to sell them as advertised," see Cal. Civ. Code § 1770(a)(9).  California's false advertising law prohibits the use of "any advertising device . . . which is untrue or misleading."  See Cal. Bus. & Prof. Code § 17500.  The UCL bars "unfair competition," which term is defined as any "business act or practice" that is (1) "fraudulent," (2) "unlawful," or (3) "unfair."  See Cal. Bus. & Prof. Code, § 17200.  Although both damages and equitable relief are available under the CLRA, see Cal. Civ. Code § 1780(a), "[t]he remedies available in a UCL or FAL action are limited to injunctive relief and restitution," see In re Vioxx Class Cases, 180 Cal. App. 4th 116, 130 (2009).

### (a)  Equitable Relief: Restitution

KSF argues Nacarino's CLRA, FAL and UCL claims for restitution are subject to dismissal for the reason that Nacarino has not pleaded facts "plausibly establishing that her legal remedies are inadequate."  (See Mot. at 12:7-9.)

The Ninth Circuit has held that "[t]he traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."  See Sonner v. Premium Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020); see also Banks v. R.C. Bigelow, Inc., 536 F.Supp.3d 640, 649 (C.D. Cal. 2021) (dismissing plaintiff's FAL claim for failure to plead lack of adequate remedy at law).  Thus, in order to state a claim under California's consumer fraud statutes, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm[.]"  See Sonner, 971 F.3d at 844.

Here, Nacarino asserts that, absent equitable relief, she and her fellow class members "may be irreparably harmed and/or denied an effective and complete remedy." (See CAC ¶¶ 59, 66).  As KSF points out, however, Nacarino's claims for damages are "based on precisely the same alleged conduct" as her equitable claims for restitution, "namely, the allegation that had she 'known the truth—i.e., that consumers must add milk

8

to obtain the grams of protein promised in the Protein Representation—[she] would not have purchased the Products or [she] would have paid less for them.'" (See Mot. at 13:17-22 (quoting CAC ¶ 6)).

Notably, Nacarino offers no argument to the contrary, see Huu Nguyen v. Nissan N. Am., Inc., No. 16-CV-05591-LHK, 2017 WL 1330602, at *4-5 (N.D. Cal. Apr. 11, 2017) (granting motion to dismiss UCL claim where plaintiff "fail[ed] to explain how damages [were] inadequate to compensate" for the "exact same alleged harm that form[ed] the basis of [his] request[] for . . . restitutionary" relief (internal quotation and citation omitted)), and instead contends her equitable claims are appropriately pled "in the alternative" (see Opp. at 10:25). "The question is not," however, "whether or when [a plaintiff is] required to choose between two available inconsistent remedies," but, rather, "whether equitable remedies are available to [the plaintiff] at all." See Shuman v. SquareTrade Inc., No. 20-CV-02725-JCS, 2021 WL 5113182, at *10 (N.D. Cal. Nov. 3, 2021) (internal quotation and citation omitted).

Accordingly, to the extent Nacarino seeks restitution under the CLRA, FAL, and UCL, her First, Second, and Third Claims for Relief are subject to dismissal for failure to state a claim. Consequently, of those three claims, only the CLRA claim, under which Nacarino seeks damages as well as equitable relief, potentially remains. The Court next turns to that claim.

### (b) Compliance with CLRA's Pre-Suit Notice Requirements

At the outset, the Court addresses KSF's argument that Nacarino's CLRA claim for damages is subject to dismissal for failure to comply with the notice requirement set forth in the CLRA. See Cal. Civ. Code § 1782(a).

"Thirty days or more prior to the commencement of an action for damages pursuant to [the CLRA], the consumer" must "[n]otify the person alleged to have . . . committed . . . the particular alleged violations . . . [and] demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of [the CLRA]." See Cal. Civ.Code § 1782(a). Such notice must "be in writing and . . . sent by

certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California." See id. The purpose of the notice requirement "is to give the manufacturer or vendor sufficient notice of alleged defects to permit appropriate corrections or replacements," the "clear intent of the act [being] to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." See Outboard Marine Corp. v. Superior Ct., 52 Cal. App. 3d 30, 40-41 (Ct. App. 1975). Federal courts have required "[s]trict adherence to the statute's notice provision…to accomplish the [CLRA's] goals of expeditious remediation before litigation." See Laster v. T–Mobile USA, Inc., 407 F.Supp.2d 1181, 1196 (S.D.Cal.2005), aff'd, 252 F. App'x 777 (9th Cir. 2007).

Here, as KSF notes, Nacarino's counsel, prior to filing the instant lawsuit, sent a notice and demand letter to KSF on behalf of an individual named Amir Houriani ("Houriani"), which letter made no mention of Nacarino, the sole plaintiff named here. KSF contends the plain language of § 1782(a) requires the named plaintiff—"the consumer" commencing the damages action—to send the notice letter to the defendant. (See id. at 22:18-19.) In response, Nacarino argues "the CLRA pre-suit notice requirement requires only that a consumer inform [the] [d]efendant of its violations and requested relief under the CLRA," and that such individual "does not have to be the same consumer who brought the lawsuit[.]" (See Opp. at 25:4-6.)

The Court concludes the letter KSF received from Houriani prior to the filing of the instant lawsuit satisfies the notice requirements of Section 1782(a) with respect to the CLRA damages claims asserted in the Complaint. In particular, the above-referenced letter was sent not only on behalf of Houriani but also "on behalf of all others similarly situated (the 'Class')," which letter provided KSF with notice of the same claims Nacarino now seeks to bring on an individual and class basis, thereby giving KSF the opportunity to correct the violations alleged in the instant action. (See Cole Decl. Ex. 1); see also, e.g., Vizcara v. Unilever United States, Inc., No. 4:20-CV-02777-YGR, 2020 WL

10

4016810, at *3 (N.D. Cal. July 16, 2020) (finding compliance with 1782(a) where notice provided by individual other than named plaintiff; noting notice letter "provided [defendant] with the opportunity to resolve individual and proposed class claims for damages"); In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1174-75 (C.D. Cal. 2010) (finding letter sent to defendant on behalf of individuals not named as class representatives "sufficient to comply with the [§ 1782(a)] notice requirement[;]" noting letter "fulfill[ed] the purpose of § 1782(a) to facilitate settlement and provide an opportunity for the manufacturer to fix alleged defects"); Sanchez v. Wal-Mart Stores, Inc., No. Civ. CIVS06CV2573DFLKJM, 2007 WL 1345706, at *3 (E.D. Cal. May 8, 2007) (holding notice provided to defendant by class member other than named plaintiff met requirements of § 1782(a); noting letter identified relevant defect and stated notice was provided "on behalf of [author] and a class of similarly situated consumers").

Accordingly, Nacarino's claim for damages under the CLRA is not subject to dismissal for failure to comply with § 1782(a).

### (c) Reasonable Consumer Standard

KSF argues Nacarino's CLRA claim for damages is subject to dismissal because, according to KSF, Nacarino fails to plead facts showing a reasonable consumer would be misled by the Protein Representation. (See Mot. at 14:11-13.)

A false advertising claim is "governed by the reasonable consumer test," see Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation and citation omitted), under which a plaintiff must "show that members of the public are likely to be deceived" by the challenged representation, see id. (internal quotation and citation omitted). The question of "'[w]hether a business practice is deceptive'" is "'usually . . . a question of fact not appropriate for decision' on a motion to dismiss." See Moran v. Edgewell Pers. Care, LLC, No. 21-CV-07669-RS, 2022 WL 3046906, at *2 (N.D. Cal. Aug. 2, 2022) (quoting Williams, 552 F.3d at 938).

Here, KSF contends Nacarino's "selective interpretation" of the Product's labeling

11

1    cannot support her claims (see Mot. at 15:3-4) because, in reviewing such claims, courts
2    consider "the promotion as a whole" (see Mot. at 15:6-7).  In particular, KSF asserts,
3    "[t]he cylindrical product containers are replete with information alerting reasonable
4    consumers that 20g protein refers to the amount of protein in one meal replacement
5    smoothie prepared with milk, as instructed" (see Mot. at 16:1-3 (emphasis in original)),
6    and that such information is neither "hidden" on the packaging nor "unreadably small"
7    (see Mot. at 16:11-12).  In response, Nacarino contends the Protein Representation can
8    mislead reasonable consumers who understand it to mean "the shake mix itself provides
9    20 grams of protein per serving." (See Opp. at 12:21 (emphasis in original).)  In support,
10   she points to the prominence of the Protein Representation on the front label, which, as
11   she notes, makes no reference to milk or the need to add ingredients in order to obtain
12   the promised grams of protein.
13          Although, as KSF points out, the need to add milk is set forth on the Product's
14   instruction panel, said disclosure is, by comparison, in much smaller type and surrounded
15   by other data.[7]  Consumers have no "duty to validate claims on the front of a product's
16   label by cross-checking them against information contained in small print" on other parts
17   of the packaging, and failure to do so "does not constitute a failure to reasonably
18   safeguard [their] interests."  See Walters v. Vitamin Shoppe Industries, Inc., 701 F. App'x
19   667, 670 (9th Cir. 2017); see also Cimoli v. Alacer Corp., 546 F.Supp.3d 897, 902-04
20   (N.D. Cal. 2021) (finding "750 mg of Vitamin C" representation on front label of gummy
21   vitamins container actionable under CLRA, notwithstanding product's back-label
22   clarification of dosage as per serving rather than per gummy); c.f. Freeman v. Time, Inc.,
23   68 F.3d 285, 287-89 (rejecting argument that "members of the public would be deceived"
24   by "Million Dollar Dream Sweepstakes" promotion, where, "immediately next to"

---

[7] The miniscule double-cross symbol adjacent to the Protein Representation is not, contrary to KSF's description, an "asterisk" but, rather, a less familiar symbol, which evidently lacks a name in common parlance, and, at best, leads the consumer to a partial disclosure, which, as noted above, is essentially buried amidst other information.

statements indicating plaintiff had won sweepstakes, promotion included "qualifying language", albeit in smaller type, "indicating that plaintiff would win only if he returned a winning prize number"); Hairston v. S. Beach Beverage Co., No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4-5 (C.D. Cal. May 18, 2012) (finding reasonable consumer "not likely to be deceived" by "all natural" representation on water bottle where representation was "immediately followed by the additional statement 'with vitamins' or 'with B vitamins'").

Accordingly, to the extent Nacarino seeks damages under the CLRA, her First Claim for Relief is not subject to dismissal.

### 2. Fourth and Fifth Claims for Relief ("Warranty Claims")

Nacarino's Fourth and Fifth Claims for Relief allege claims for breach of express and implied warranty, respectively.

#### (a) Express Warranty

Under California law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," see Cal. Com. Code § 2313(1)(a), and "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description," see Cal. Com. Code § 2313(1)(b). To state a claim for breach of express warranty, the plaintiff must show "(1) [the seller] made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." See Corbett v. PharmaCare U.S., Inc., 567 F. Supp. 3d 1172, 1199 (S.D. Cal. 2021) (internal quotation and citation omitted). "To constitute a warranty and be actionable, the statement must be specific and unequivocal." Id. (internal quotation and citation omitted).

Here, KSF argues the Protein Representation on the front label of the Product is not an affirmation of fact or promise that the amount of protein listed is per serving/scoop

13

alone, rather than per scoop as combined with fat free milk, and, consequently, is not actionable as an express warranty.

Although the Court has found the Protein Representation could mislead a reasonable consumer, the Court agrees that the representation does not constitute an express statement that the amount of protein is per serving/scoop alone. See Cimoli, 546 F.Supp.3d at 900, 905 (holding no breach of express warranty where label on Vitamin C gummies, which stated "750 mg Vitamin C," could mislead consumers to believe that each gummy contained 750 mg of Vitamin C, when, in fact, each serving of gummies contained that amount; noting representation "[did] not amount to an unequivocal statement or promise that the dosage [was] per gummy" and was "otherwise truthful").

Accordingly, Nacarino's Fourth Claim for Relief is subject to dismissal for failure to state a claim.

**(b)    Implied Warranty**

Under California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale." See Cal. Com. Code § 2314(1). The term "merchantable," as used in § 2314, has several meanings, including that "the product must conform to the promises or affirmations of fact made on the container or label if any." See Cal. Com. Code § 2314(2)(f).  Here, Nacarino alleges she purchased the Product in reliance on the Protein Representation, located on the Product's front label, by which, according to Nacarino, KSF "made an implied promise . . . that the Product[] contain[s] the specific number of grams of protein" advertised, and that the Product fails to conform to said implied promise because it contains "far fewer grams of protein [than] as promised on the [Product's] front label."  (See CAC ¶ 81).

Because Nacarino's implied warranty claim, like her express warranty claim, is predicated solely on the above-discussed failure to conform to an allegedly "implied promise" on the Product's front label (see CAC ¶ 81), and because the Court has found Nacarino has not pled an express warranty claim based thereon, Nacarino's implied

1  warranty claim likewise fails.  See Cimoli, 546 F.Supp.3d at 905 (finding, where express
2  and implied warranty claims were predicated on same alleged "affirmation of fact or
3  promise," implied warranty claim "rises and falls" with express warranty claim).[8]
4      Accordingly, Nacarino's Fifth Claim for Relief is subject to dismissal.

    **3.  Sixth Claim for Relief**

6  Nacarino's Sixth Claim for Relief is titled "Quasi Contract/Unjust
7  Enrichment/Restitution."  (See CAC at 23:16.)  KSF argues said claim is subject to
8  dismissal, for the asserted reason that "California does not recognize a separate cause of
9  action for unjust enrichment."  (See Mot. at 21:8-9.)[9]
10      Although KSF is correct that "unjust enrichment" itself is "not a cause of action,"
11  see McBride v. Boughton, 123 Cal.App. 4th 379, 387 (2004) (noting "[u]njust enrichment"
12  is a "general principle, underlying various legal doctrines and remedies") (internal
13  quotation and citation omitted), the Ninth Circuit has recognized that "when a plaintiff
14  alleges unjust enrichment, a court may construe the cause of action as a quasi-contract
15  claim seeking restitution[,]" see Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762
16  (9th Cir. 2015) (internal quotation and citation omitted).  In the instant case, the Court will
17  construe Nacarino's Sixth Claim for Relief as a standalone equitable claim, but
18  nonetheless finds the claim subject to dismissal, given Nacarino's failure to plausibly
19  allege she lacks an adequate remedy at law.  See Sonner, 971 F.3d at 844 (holding
20  "[plaintiff] must establish that she lacks an adequate remedy at law before securing
21  equitable restitution for past harm under the UCL and CLRA."); see also, e.g., Barrett v.
22  Apple Inc., 523 F. Supp. 3d 1132, 1157 (N.D. Cal. 2021) (finding "under Sonner, a quasi-

---

[8] In light of this finding, the Court does not address herein KSF's argument that a plaintiff may only allege a claim for breach of implied warranty of merchantability against a defendant in privity with such plaintiff.

[9] KSF additionally argues said claim is subject to dismissal for the asserted reason that it is "based on the same misguided theory of consumer deception as the CLRA, FAL, and UCL claims."  (See Mot. at 21:15-16.) This argument is foreclosed, however, by the Court's finding that, for purposes of a claim for damages under the CLRA, a reasonable consumer could be misled by the Protein Representation.  See Section B(1)(c), supra.

contract claim cannot survive a motion to dismiss unless the proponent adequately pleads that no legal remedy exists.").

Accordingly, the Sixth Claim for Relief is subject to dismissal.

### 4. Seventh Claim for Relief

Nacarino's Seventh Claim for Relief is titled "Common Law Fraud." (See CAC at 24:14.)

"The elements of fraud are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage," Gil v. Bank of Am., N.A., 138 Cal.App.4th 1371, 1381 (2006), and such claims are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure, see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding plaintiff must include "the who, what, when, where, and how" of the alleged fraud).

Here, KSF contends, Nacarino's common law fraud claim is subject to dismissal "for the same reasons as her CLRA, UCL and FAL claims," namely, Nacarino's failure to "plausibly establish a false representation." (See Mot. at 21:23-24.) Although, contrary to KSF's earlier argument, the Court has found the Protein Representation could mislead a reasonable consumer for purposes of a claim for damages under the CLRA, the Court, as set forth below, agrees with KSF that Nacarino has failed to allege an actionable misstatement for purposes of a claim alleging common law fraud.

The statutory consumer fraud and common law consumer fraud standards are "substantively distinct." See In re Actimmune Mktg. Litig., No. C 08-02376 MHP, 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009), aff'd, 464 F. App'x 651 (9th Cir. 2011). Unlike the CLRA, FAL, and UCL, which only require an allegation that "members of the public are likely to be deceived" by a defendant's conduct, see id., "'[a] common law fraudulent deception must be actually false,'" see id. (alteration omitted) (quoting In re Tobacco II Cases, 46 Cal.4th 298, 312 (2009); see also Day v. AT & T Corp., 63 Cal. App. 4th 325, 332-33 (1998) (noting "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive a consumer, such as by failure to disclose other

16

relevant information, is actionable" under California's consumer fraud statutes, whereas "a fraudulent deception must be actually false").

Here, as discussed earlier, the Protein Representation is not a false affirmation of fact, but rather an ambiguous description of the Product's protein content, which can be clarified by reference to the corresponding disclosures on the instructions panel and/or Nutrition Facts panel. Consequently, while the Protein Representation may be "couched in . . . a manner" sufficient to support a claim under the CLRA, see Day, 63 Cal.App.4th at 332-33, it does not rise to the level of an express misstatement necessary to support a fraud claim.[10]

Accordingly, Nacarino's Seventh Claim for Relief is subject to dismissal.

## CONCLUSION

For the reasons stated above, KSF's motion to dismiss is hereby GRANTED in part and DENIED in part as follows:

1. To the extent Nacarino, by her First Claim for Relief, seeks damages, the motion is DENIED.
2. In all other respects, the motion is GRANTED.

**IT IS SO ORDERED.**

Dated: November 23, 2022

MAXINE M. CHESNEY
United States District Judge

---

[10] In light of this finding, the Court does not address herein KSF's argument that Nacarino failed to plausibly allege knowledge of falsity.

17